**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**TIMOTHY J. STERLING and SARAH A. STERLING**                    **PLAINTIFFS**

**v.**                                        **CIVIL ACTION NO. 3:25-cv-00097-HTW-LGI**

**LIBERTY MUTUAL GROUP, INC.**
*d/b/a Safeco Insurance Company*                              **DEFENDANT**

<u>**ORDER**</u>

Before the Court are several discovery disputes between the parties, submitted to this Court via email. Also before the Court is Defendant's Motion to Quash [23] Subpoena Duces Tecum, filed on July 30, 2025. Noting that the resolution of one dispute impacts upon the others, this Court takes up all disputes and the Motion to Quash [23] herein.

The Court, having considered the submissions, the record and relevant law, finds that Plaintiffs' *ore tenus* Motion to Compel is hereby GRANTED in part and DENIED in part and Defendant's Motion to Quash [23] Subpoena Duces Tecum is DENIED, as discussed below.

**I.      <u>Emailed Discovery Disputes</u>**

On July 23, 2025, Plaintiffs' counsel sent an email requesting a discovery conference to address several discovery disputes. Email to Isaac's Chambers from Attorney Chad Welch, dated 7/23/2025. Plaintiffs' email set forth four specific discovery-related disputes between the parties. On July 30, 2025, Defendant responded, setting forth its position to each of the four issues. Email from Attorney F. Hall Bailey.  Upon review of the parties' submissions, the Court: 1) directed Safeco[1] to provide deposition dates by August 1; 2) noted that the second issue had been resolved,

---

[1] Referred to throughout as both Safeco and Liberty. The Court recognizes that Liberty Mutual is doing business as Safeco, and it uses the two interchangeably.

as Safeco clarified that it was not relying on the defense of advice-of-counsel; 3) set a discovery hearing on Plaintiffs' request to compel information pertaining to Safeco's handling of claims in proximity to the Sterlings' home for the same date of loss; and 4) noted that the requested privilege log was not necessary at the time, but that Defendant intended to produce the claims manual subject to a protective order. *See* Ore Tenus Motions and corresponding Text-only Orders, dated 8/1/2025 and Notice of Discovery Hearing, also dated 8/1/2025.

### 1. Discovery Hearing

On August 8, 2025, a discovery hearing was held, wherein the Court heard arguments from the parties and issued the following rulings from the bench.

1. Deposition Dates: The Court directed Safeco to provide a deposition date for the inspector by close of business, on August 11, 2025, and it entered a text-only order to that effect.
2. Advice-of Counsel Defense: The Court ordered Safeco to supplement its discovery response to indicate that Safeco is not relying on advice-of-counsel as a defense, by August 22, 2025. Defendant was also ordered to supplement other discovery responses by this date.
3. Extension of Expert Designation Deadlines: The Court granted Plaintiffs' unopposed *ore tenus* motion to extend the deadlines by 30-days.
4. Production of Information Regarding Other Claims: The Court held in abeyance its ruling on this issue, pending its receipt and review of additional briefing. Parties were directed to supplement their email submissions with letter briefs by August 15, 2025.

*See* Ore Tenus Motions and corresponding Text-only Orders, dated 8/8/2025. A review of the docket reveals that both parties timely submitted supplemental letter briefs expounding upon their respective positions. *See* Plaintiffs' Response to Order, Doc. [33]; *see also* Defendant's Response to Order [34].

### 2. Interim Discovery Disputes

On August 25, 2025, Plaintiffs emailed the Court, advising of additional discovery disputes, including three issues previously raised at the hearing on August 8. While the Court

mainly focuses on the three issues pertinent to the hearing, it briefly mentions the other issues, as the relief sought encompasses both the old and new discovery issues. In their email, Plaintiffs assert Defendant continues to delay in providing deposition dates. Emails from Chad Welch, dated 8/25/2025. They also state Liberty failed to follow the Court's order to supplement the discovery responses by August 22, 2025. *Id.* And they advise that Defendant has not produced the claims handling guidelines that it previously agreed to provide subject to a protective order. Plaintiffs move for the following relief: as to the claims handling guidelines, Plaintiffs request that the Court order the production of the claims handling guidelines without a protective order, since Liberty has refused to facilitate the entry of one; as to the supplementation of the discovery responses (RFAs), they urge this Court to enter an order finding that Liberty has violated the August 11 text-only order  requiring supplementation within 48 hours. *Id.*[2]

In response to Plaintiffs' requests for relief, Defendant asks that the Court decline to grant the requested relief. Emails from Hall Bailey, dated 8/25/2025. Defense counsel advised that the deposition dates have now been provided, that the supplemental RFAs and signed interrogatory responses – though late – have been filed, and that the parties were actively working to prepare an agreed form of a consent protective order.[3] *Id.*; *see also* emails from Hall Bailey, dated 8/26/2025. On August 27, 2025, Defendant also informed the Court that the guidelines were provided to Plaintiff's counsel. Email dated 8/27/2025.

Based on the representation of the parties and the information noted *infra*, in footnotes 1 and 2, these issues appear to be resolved. As such the Court makes no ruling. The Court proceeds

---

[2] As to Plaintiffs' requests that this Court compel Defendant to provide the deposition dates for two Liberty employees, in lieu of monetary sanctions, they ask that this Court enter an order memorializing the fact that, on two occasions, the Sterlings have only obtained deposition dates for Liberty employees after the Court ordered Liberty to respond to their requests. *See* Email from Attorney Chad Welch, dated 8/25/2025 at 7:20 AM.

[3] On August 26, 2025, the finalized Consent Protective Order [39] was entered onto the docket in this case, and this issue is now resolved.

to its analysis of the *ore tenus* motion to compel production of the production of information pertaining to Safeco's handling of claims in the proximity of the Plaintiffs' home for the same date of loss.

### 1. *Ore Tenus Motion to Compel*

The Court now turns to the parties' discovery request and supplemental letter briefs regarding the discoverability of Defendant's claims file.

#### a. *Standard*

This Court has broad discretion over discovery disputes concerning the scope of discovery. *See Hernandez v. Causey*, 2020 WL 5412486, at *3 (S.D. Miss. Sept. 9, 2020) (quoting *Freeman v. United States*, 566 F.3d 326, 341 (5th Cir. 2009) ([i]t is well established that the scope of discovery is within the sound discretion of the trial court.")); *See also Saucier v. Lakeview Corp.*, 2014 WL 12906612, at *1 (S.D. Miss. Dec. 30, 2014) ("[a] district court has "broad discretion" to control the procedure for obtaining discoverable material.").

In reviewing a motion to compel, courts must consider that discovery rules "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979). "At some point, however, discovery yields diminishing returns, needlessly increases expenses, and delays the resolution of the parties' dispute." *Willis v. City of Hattiesburg*, No. 2:14-cv-89-KS-MTP, 2016 U.S. Dist. LEXIS 30985, 2016 WL 918038, at *2 (S.D. Miss. Mar. 10, 2016). Indeed, "[d]iscovery is not a license for the [parties] to 'go fishing' and is limited to information that 'is relevant to any party's claim or defense.'" *Barnes v. Tumlinson*, 597 Fed. App'x 798, 799 (5th Cir. 2015) (*citing Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978); Fed. R. Civ. P. 26(b)(1)). "Finding a just and appropriate balance in the discovery process" is thus one of

4

the Court's key responsibilities. *Willis*, 2016 U.S. Dist. LEXIS 30985, 2016 WL 918038, at *2.

Rule 26(b)(1) provides that information is within the scope of discovery if it is not privileged, is relevant, and proportional to the needs of the case:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Meanwhile, Rule 26(c) empowers the Court to control the procedure for obtaining discoverable information. *Saucier*, 2014 WL 12906612, at *1. Finally, Rule 37 provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" and it authorizes the Court to issue an order compelling the production of such information. Fed. R. Civ. P. 37(a)(4).

### b. Argument

The specific discovery requests and responses at issue are as follows:

**REQUEST NO. 22**: For Safeco claim numbers 0567690898 and 057177493, produce information sufficient to show:

(i) The loss location and address;

(ii) The type of loss claimed, including the cause;

(iii) Any documents or communications regarding hail damage or a hail event; and

(iv) Documents or communications establishing Safeco paid the claims.

**RESPONSE**: Liberty objects to Request for Production No. 22 on the grounds that it is overly broad, including as to time and place and seeks information that is not relevant to the claims

or defenses of any party reasonably calculated to lead to the discovery of admissible evidence or otherwise proportionate to the needs of the case, as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Further, any such information is confidential. The handling of the Sterlings' claim was based upon the unique facts of their loss as applied to the applicable terms of his policy. To the extent Request for Production No. 22 seeks production of documents related to Liberty's handling of the claims of other policyholders under the facts relating to their loss and the terms of their policy, such documentation is irrelevant to whether the Sterlings' claim is covered by the terms of their policy.

    **REQUEST NO. 23**: For all hail claims both submitted to Safeco and paid by Safeco for date of loss April 9, 2024 or April 10, 2024 in the 39211 and/or 39216 Jackson, Mississippi zip codes, produce information sufficient to show:

    (i) The loss location and address;

    (ii) The type of loss claimed, including the cause;

    (iii) Any documents or communications regarding hail damage or a hail event; and

    (iv) Documents or communications establishing Safeco paid the claims.

    **RESPONSE**: Liberty objects to Request for Production No. 23 on the grounds that it is overly broad, including as to time and place and seeks information that is neither relevant to the claims or defenses of any party, reasonably calculated to lead to the discovery of admissible evidence or otherwise proportionate to the needs of the case, as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure. Moreover, it would be unduly burdensome and expensive to require Liberty to conduct a search for the information requested by the Sterlings. Further, any such information is confidential. The handling of the Sterlings' claim was based upon the unique facts of their loss as applied to the applicable terms of his policy. To the extent Request for

Production No. 23 seeks production of documents related to Liberty's handling of the claims of other policyholders under the facts relating to their loss and the terms of their policy, such documentation is irrelevant to whether the Sterlings' claim is covered by the terms of their policy. Without waiving said objections, Liberty will produce its non-privileged documents within its claim file generated prior to the filing of this suit by the Sterlings.

Following the August 8 hearing, the parties submitted supplemental briefing as to their respective positions regarding Plaintiffs' *ore tenus* motion to compel production of Liberty's claims file providing the information sought in Interrogatory No. 18 and Requests for Production Nos. 22 and 23.

<u>Plaintiffs' Supplemental Brief</u>

Plaintiffs move to compel production of Defendant's claims files for all claims involving: hail damage occurring on April 9, 2024 and/or April 10, 2024; (ii) within a 5-mile radius of the location of the Sterlings' home. At the outset of their supplemental brief, the Sterlings aver that Liberty has now conceded their claim and promised to pay for the roof. Doc. [33] at 1. They contend that admitting the claim is covered establishes the discoverability of other claims evidence. *Id.* at 2. Specifically, they note that Liberty initially denied the claim, after providing conflicting determinations regarding the claim - first that the roof had no hail damage and then that the hail occurred prior to inception of the policy. *Id.* But now that Liberty is paying the claim (i.e. agreeing that the claim is owed), Plaintiffs contend Defendant is conceding there was hail in the area and that payment is owed as a result. *Id.*

Plaintiffs anticipate that Liberty, since paying the claim, will now contend that the other claims files are irrelevant. *Id.* To this, Plaintiffs argue it is the exact opposite, as they believe it is relevant "what Liberty knew, and when it knew it" because they contend this information goes

directly to their claim of bad faith. *Id.* It also believes the evidence relied upon by Liberty to agree to pay the claim, "just one business day after Liberty appeared in this Court to dispute that it owed the claim," is relevant. *Id.* at 3. They assert entitlement to information showing why Liberty denied the claim, what facts it relied upon to deny, why it later agreed to pay the claim, and what facts it relied upon to pay, are both discoverable and admissible pieces of evidence. *Id.* at 4.

The Sterlings accuse Liberty of concealing its claim file, and they move to compel the file, arguing that the file contains information likely to lead to the discovery of admissible evidence. Plaintiffs say Liberty had an ongoing duty to investigate and adjust their claim even after the subject lawsuit was filed. *Id.* They argue Liberty's denial, based on the lack of hail, was a false statement that Liberty knew was false, and was an intentional misrepresentation of facts affecting coverage and constituting bad faith. *Id.* Plaintiffs also note Liberty's affirmative defense, stating that they investigated and adjusted the Sterlings' claim in good faith. *Id.* at 8. Plaintiffs argue Liberty has now conceded compensatory damages, so they are permitted to put on their case for punitive damages, which allows for an assessment of Liberty's motivation and to uncover whether Liberty attempted to conceal misconduct. *Id.* at 4. Plaintiffs argue Liberty has always known and only paid the claim now to avoid having to explain its position to the Court. *Id.*

Plaintiffs urge this Court to grant the motion, asserting that Liberty's handling of other hail claims within a 5-mile radius of the Sterlings' home is relevant. *Id.* at 5. They contend Liberty relied upon a weather report that extended to a 5-mile radius when it denied the claim on the basis there was no hail was reported in the area. *Id.* at 5. Plaintiffs argue Liberty's knowledge of hail in the area is central to "dismantling Liberty's defense that it handled the Sterlings' claim in good faith." *Id.* And they request access to other claims files to reveal that Liberty knew hail occurred but denied the Sterlings' claim regardless.

In support of their request, Plaintiffs point to several cases wherein this Court allowed discovery into an insurance company's claims files within specified parameters, including proximity to the subject residence and requiring redaction of certain confidential information. *Id.* at 6-7 (citing to *Muller v. State Farm Fire & Cas. Co.*, No. 1:06-CV-95-LTS-RHW, 2007 WL 1031651, at *1 (S.D. Miss. Mar. 29, 2007) and *Marion v. State Farm Fire & Cas. Co.*, No. 1:06-CV-969-LTS-RHW, 2008 WL 11345950, at *1 (S.D. Miss. Mar. 28, 2008)). As to *Muller* and *Marion*, Plaintiffs submit that Liberty's other claims files are needed to confirm the cause of loss but also to establish what facts Liberty had when it denied the claim based on the determination that there was no hail in the area. *Id.* at 7. Here, Plaintiffs seek eyewitness statements, engineering reports, loss summaries, payments for hail claims, and other evidence informative as to these issues. *Id.* According to Plaintiffs, just as in Muller, confidentiality concerns do not justify withholding the information, because the information (social security numbers, dates of birth, and bank account information) can be produced with redactions. *Id.* at 10.

Plaintiffs also look to this Court's previous ruling *Giles v. State Farm Fire & Cas. Co.*, No. 5:22-CV-00019-DCB-LGI, 2023 WL 7169092, at *5 (S.D. Miss. May 31, 2023), noting that Defendant relied on this case during the August 8 hearing. In comparing the instant matter to *Giles*, Plaintiffs assert their request for Liberty's other claims files has probative value to the case, because they seek information regarding related claims, involving hail damage in the area around the date of loss. *Id.* at 8. They further distinguish this case from *Giles*, claiming that Liberty has now conceded coverage, and this admission establishes bad faith for which they are now entitled to show that Liberty concealed misconduct. *Id.* Plaintiffs state they have already established the presence of hail in the area, through a report that shows hail mere yards from their home at a neighboring home directly behind theirs, for which Liberty paid a claim for hail damage. *Id.*

9

Plaintiffs argue this request is neither overly broad nor unduly burdensome. *Id.* at 9. Plaintiffs argue Liberty has not explained how compliance with this request would be unduly burdensome. *Id.* Rather, they contend the discovery sought is narrowly tailored to address issues of material fact that are disputed and highly probative on issues related to punitive damages and for rebutting Defendant's affirmative defense. *Id.* Plaintiffs say the request is limited in both temporal and geographic scope. *Id.*

Plaintiffs believe targeted discovery into Liberty's claims files for hail claims occurring April 9-10, 2024, within a 5-mile radius of the Sterlings' home is warranted here. Thus, they urge this Court to order that Liberty produce the requested claims files.

Defendant's Supplemental Brief

Defendant states Plaintiffs are seeking production of other Liberty claim files through three different types of requests – Interrogatory No. 18, Request for Production No. 22, and a subpoena duces tecum served on Ross & Yerger, the Plaintiffs' own insurance agent. Doc. [34] at 5. It has objected to the requests on grounds that the requests are overly broad, irrelevant, unduly burdensome and expensive to conduct a search for the requested information, and that the requests seek confidential information. *Id.* In its objection, Defendant also stated the handling of the Sterlings' claim was based on the unique facts of their loss as applied to the terms of their policy, not irrelevant facts of other policyholders' claims. *Id.*

Defendant argues "[c]laims of nonparties are generally not relevant, even if the plaintiff claims the defendant acted in bad faith." *Id.* at 6 (quoting *Opotowsky v. Paul Revere Life Ins. Co.*, No. CV 20-1480, 2021 WL 7708049, at *3 (E.D. La. July 21, 2021). Defendant relies on two additional district court decisions out of the Southern District of Texas to support its argument that these Plaintiffs should not be permitted to discover information unrelated to their claim. *Id.* at 6-

7.[4] And it reiterates its position that this Court's ruling in *Giles* favors Defendant. *Id.* at 7. After noting the Court's analysis and findings in *Giles*, Liberty says this Court should deny the Sterlings' discovery requests for the same reasons it denied the request in *Giles*. *Id.* at 8. Defendant contends even if Plaintiffs argue that the information sought is relevant, this does not mean they should be allowed to obtain it, as there has been no showing that Liberty relied upon other claims in making its decision to deny the Sterlings' claim. *Id.* Defendant asserts that, after the Sterlings claimed their hail damage was caused by the April 9-10 storm, Liberty retained an independent engineering firm to conduct an investigation and provide a report. *Id.* And after investigation, the engineer confirmed the existence of hail damage to the roof but reported the damage was not caused by the subject hailstorm. *Id.* at 9.

Defendant also argues the breadth of Plaintiffs' requests are far broader than the request in *Giles*, where the plaintiff limited the area to half a mile from his residence. *Id.* Liberty opposes Plaintiffs' requests that it search within a five-mile radius and for Ross & Yerger to search within two zip codes (39211 and 39216). *Id.* According to Defendant, zip code 39211 covers 12.311 square miles, and 39216 covers 3.102 square miles. *Id.* It also says a 5-mile radius would be approximately 78.5 square miles. *Id.* Defendant contends such a search is burdensome and disproportionate to the needs of the case. *Id.*

Further, Defendant points to Exhibit 5 of Plaintiffs' supplemental briefing and contends the report references one claim number that is also the subject of another request for production, which it believes is indication that Plaintiffs already have access to two claims files they now seek.

---

[4] *Columbia Mut. Ins. Co. v. Kerrville Pro. Props., Ltd.*, No. SA–16–CA–00973–XR, 2017 WL 7805755, at *7 (W.D. Tex. July 12, 2017) and *Dizdar v. State Farm Lloyds*, No. 7:14–CV–402, 2015 WL 12780640, at *5 (S.D. Tex. Jan. 21, 2015).

*Id.* Defendant argues this shows they already have relative access and therefore the request is disproportionate to the needs of this case. *Id.* It argues that neither Liberty nor Ross & Yerger should be required to perform a costly search over such an expansive range, especially when Plaintiffs already have two representative claim files. *Id.* Further, Defendant contends even if Plaintiffs obtain documentation as to the payment of other claims for hail damage during the storm, this information is not dispositive of whether there was hail damage at their residence as a result of the storm. *Id.* at 9-10. Defendant argues that, even if the Sterlings point to hailstorm claims filed within a five-mile radius, there is nothing showing that the same hail was also present at their home. *Id.* Therefore, Defendant asks that this Court decline Plaintiffs request "to fish into unrelated third-party matters." *Id.* (Citation omitted).

Defendant submits that the general requirements under Rule 26(b)(1) disfavor allowing for the production of the requested information. *Id.* Thus, it asks that Plaintiffs' *ore tenus* motion to compel be denied. *Id.*

### c.    *Court's Ruling*

The Court addresses the two discovery requests together, as the information sought is generally the same or overlapping. In sum, the Sterlings request that this Court order Liberty to produce its claims files for all claims involving hail damage occurring on April 9, 2024 and/or April 10, 2024, within a certain of the Sterlings' home. Defendant maintains that the information sought is not discoverable, irrelevant, unduly burdensome and disproportionate to the needs of this case.

Although this Court finds that the information sought in the interrogatory, request for production and supplemental briefing seeks information that is relevant to the issues in this case, the Court must determine whether the request as stated is overly broad or disproportionate to the

needs of the case. To determine whether the information sought is proportional to the needs of the case, the Court considers the factors set forth in Rule 26(1): (1) importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1).

After review of the six factors set forth in Rule 26(b)(1), the Court finds that the Plaintiffs' request, is indeed proportionate to the needs of the case. During the hearing, Plaintiffs voluntarily limited their request for information to a five-mile radius from the location of their home, rather than claims in the entire zip codes of 39211 and 39216. Thus, the five-mile limitation suggested by Plaintiffs narrows the scope of the geographic search area. However, the Court considers whether the five-mile radius is still overly broad in geographic area in relation to the information sought.

Plaintiffs rely upon the holdings in *Marion* and *Muller* to support their request for the information requested. In *Marion*, the plaintiffs (homeowners) sought documents from the claim files of insureds who were not involved in the adjustment of the plaintiff's claim. *Marion*, 2008 WL 11345950 at *1. The defendants in *Marion* argued that the requested documents were from cases unrelated to the Marions' case. *Id*. In response to the Marions' request for certain claims records for any insured located within ½ mile of the plaintiffs' residence, the *Marion* court noted "in previous orders, this Court has allowed, within certain prescribed limits, the production of claim files of other insureds within a ½ mile radius of Plaintiffs' residence." *Id*.

Similarly, the court in *Muller* granted the plaintiffs' motion to compel State Farm to identify and describe the facts and circumstances of other claims related to the same storm that

were paid to insureds within a one-half mile radius of the Mullers' home. *Muller*, 2007 WL 1031651 at *1. State Farm had objected to the request arguing that the information sought was confidential and irrelevant to the Mullers' litigation. *Id.* The *Muller* court noted that State Farm personnel had considered the property damage of adjacent and surrounding properties when adjusting the Mullers' claim, and therefore it found that the payments made to other insureds in the area was reasonably calculated to lead to the discovery of admissible evidence. *Id.* The Court considered the particular circumstances and geographic location of the Mullers' property, and it determined the property was located within a reasonably close proximity to other areas impacted by the storm. *Id.* at 1-2. As to the privacy rights of State Farm's other insureds, the *Muller* court held that confidentiality of sensitive information could be "adequately protected by redacting personal information such as social security numbers, dates of birth and bank accounts." *Id.* at *2. Further, the court ordered that the claims information of other State Farm insureds not be disseminated outside the litigation, and that it be destroyed by Plaintiff upon termination of the litigation. *Id.* The Mullers' motion was granted, and the court set forth the geographic parameters and the specific types of claims information to be produced. *Id.* at *3.

Both Plaintiffs and Defendant cite to this Court's order in *Giles*, seeking to establish that the case favors their position over its opponent. Defendant notes the plaintiff in *Giles* agreed to limit the geographical region to a half-mile radius, and it points to portions of the court's order to support its request that the Sterlings be denied the requested third-party files. [34] at 7-8. Defendant states that the *Giles* court found that, although the information sought had been sufficiently limited in scope and time and was not burdensome, it did not find that the request had probative value to the case. *Id.* at 8. Defendant also points to the portion of the order finding that Plaintiff had not

made a sufficient showing that State Farm relied on the unrelated claims of neighboring insureds to make adjustments and render an estimate. *Id.*

Plaintiffs, on the other hand, argue that Defendant's reliance on *Giles* to keep the other claims files secret is misplaced. [33] at 7. Rather, they argue, the court in *Giles* assessed the specific facts of that case, found that information about unrelated claims and lawsuits against State Farm was proportionate to the needs of the case, and granted the motion to compel to the extent it pertained to lawsuits but denied the request as to unrelated claims. *Id.* Plaintiffs distinguish their situation from the plaintiff in *Giles*, arguing that the files sought do have probative value because the request seeks information directly related to claims involving hail damage in their area around a specified date of loss. *Id.* at 8. Because Liberty has asserted an affirmative defense, stating that it investigated and adjusted the claim in good faith and also stating that it denied the claim because there was no evidence of hail in the area, Plaintiff argues entitlement to the requested information in order to establish their claims against Liberty. *Id.* Plaintiffs also say, unlike *Giles*, they are entitled to the information now that Liberty has conceded coverage. *Id.*

Here, the Court considers the specific case facts and circumstances and finds that the motion to compel shall be granted in part. This Court has previously allowed the production of claims files related to similar claims located within close proximity of the disputed claim. *See Lagasse v. State Farm Fire & Cas. Co.*, No. 1:07-CV-761-LTS-RHW, 2009 WL 10676923 at *2 (S.D. Miss. Jan. 15, 2009); *Muller*, 2007 WL 1031651 at *1 (S.D. Miss. Mar. 29, 2007); *Marion*, 2008 WL 11345950, at *2 (S.D. Miss. Mar. 28, 2008). As to the Court's prior holding in *Giles*, the undersigned specifically points out the distinction in case facts between that case and the instant matter. As noted in the opinion, Giles's request for claims files was denied, because he failed to make a sufficient showing that State Farm relied on the claims of his neighboring insureds to make

any adjustments to his claim. However, in the instant case, Plaintiffs present several pertinent facts that support of their position: They point to Liberty's initial denial of the claim, based on a representation that there was no hail in the subject area. They also refer to Liberty's own affirmative defense, attesting that it investigated and adjusted the claim in good faith. They assert knowledge of other claims paid by Liberty, within close proximity to the subject home. And now, Plaintiffs submit that Liberty has agreed to make payment, which they believe is a concession of coverage. Here, after conducting a case specific factual inquiry, the Court finds the Plaintiffs have made a sufficient showing that they are entitled to the requested information.

The Court notes that the Plaintiffs voluntarily reduced the geographic search area from the area codes of 39211 and 39216, down to a five-mile radius from their home, located in zip code 39216. Upon review and consideration of the now narrowed search area, the undersigned looks to the U.S. Census Bureau's population data for the area in question for guidance. While the Court agrees that the initial request was likely burdensome and may result in excessive time and expense to collect and compile the information, it is not convinced that a five-mile radius is much less burdensome. According to the Census Bureau's data, the zip code of 39211 covers approximately a five-mile radius (12.31 square miles of land area), has a population of 24,900 people, and includes about 11,334 residential homes. *See* United States Census Bureau, 2020 Decennial Census Data.[5] The zip code of 39216 covers approximately a two-mile radius (3.10 square miles of land area), has a population of 4,061 people, and includes about 2,391 residential homes. *Id.* The Sterlings' home is located in 39216, and given Plaintiffs' representation that they have knowledge of other Liberty-insureds affected by the subject hailstorm within a few hundred yards of their home, this Court reasons that other insureds impacted by the subject hailstorm may be

---

[5] *See also* United States Zip Codes.org

found in closer proximity than a five-mile radius. Therefore, the Court declines to grant a geographic search covering the five-mile radius requested by Plaintiffs. However, the Court permits a geographical search of ***paid*** claims within a one-mile radius of Plaintiffs' home address, and finds that such a limitation is proportional to the needs of the case and is neither overly broad or unduly burdensome.[6] Notably, the Court narrows the geographical search area and limits the search to paid claims in an effort to reduce the burden on Defendant while ensuring that the search yields pertinent information.

After due consideration of Plaintiffs' *ore tenus* motion to compel, the Court grants the motion in part and denies in part, in accordance with the foregoing. Liberty is directed to supplement its responses to Requests for Production Nos. 22 and 23, and to produce, by October 15, 2025, its claims files for all ***paid*** claims involving hail damage occurring on April 9, 2024 and/or April 10, 2024, within a one-mile radius of the location of Sterlings home. In an effort to protect sensitive information of other policyholders, Liberty shall redact personal information such as names, social security numbers, dates of birth, bank account or credit card numbers, and similar personal identifying information; policy numbers, policy types and physical addresses must not be redacted. The parties are also ordered to enter into a protective order to ensure additional safeguards to protect the privacy interests of the affected policyholders. Said protective order should include provisions which specify that the information obtained shall not be disseminated or used in any way outside of the instant case, that the information obtained shall be designated as "Attorney Eyes Only," and that the information obtained shall be destroyed by the Plaintiffs upon termination of this litigation.

---

[6] Upon review of a local zip code map, the undersigned notes that the location of the Sterlings' home is positioned in the northern portion of 39216, and a one-mile radius will likely capture other homes located in 39216 as well as the nearby zip codes of 39211, 39206, and 39213.

## II.  **Defendant's Motion to Quash Subpoena**

On July 17, 2025, Plaintiffs filed a Notice of Intent [21] to serve subpoena upon non-party Ross & Yerger Insurance, Inc. The subpoena was served on July 17, 2025, and requested "all reports . . . and/or portions of reports you received related to homeowners' insurance claims where hail was an involved peril for homes in zip codes 39216 and/or 39211 stemming from and/or relating to the April 9-10, 2024 storms, including but not limited to reports generated by CoreLogic and/or EFI Global." [22] at 2, 4.

On July 30, 2025, Defendant filed the instant Motion to Quash [23] the subpoena, "for the same reasons that it objected to the Plaintiffs' interrogatory seeking this same information." [23]. Defendant specifically contends the documents subpoenaed from Ross & Yerger are overly broad and seek production of information that is neither relevant to the claims or defenses of either party to the litigation, not reasonably calculated to lead to the discovery of admissible evidence or otherwise proportionate under Rule 26(b)(1). *Id.* Liberty also argues the information sought is confidential. And it objects to the production of information or documentation related to Liberty's handling of the claims of other policyholders as irrelevant. *Id.* Defendant asks this Court to quash the subpoena, because it could contain some of the same documents Plaintiffs are seeking through an interrogatory and because request is the subject of a motion to compel currently before the Court. *Id.* at 3. Defendant says Plaintiffs should not be able to make an end run around Liberty's objection by obtaining the information via subpoena. *Id.*

Plaintiffs respond in opposition. See [31], [32]. They say Liberty's refusal to produce relevant and discoverable information in its own possession forced them to pursue the information through the subject subpoena. [32] at 3. Plaintiffs believe Ross & Yerger possesses reports and documents that conflict with Liberty's "false position that there was no hail in the area." *Id.* The

Sterlings note that Ross & Yerger has not objected to the subpoena and has informed Plaintiffs' counsel that it has responsive information. *Id.* Plaintiffs urge this Court to deny the instant motion, because the discovery requested is specifically tied to the claims-denial, and for the reasons set forth in its supplemental letter brief, which is summarized above. *Id.* at 4-5. Further, Plaintiffs say compliance with the subpoena would not be unduly burdensome, and Liberty has no standing to contend otherwise. *Id.* at 5. Plaintiffs say the request is narrowly tailored to the disputed issues of material fact, and Liberty's confidentiality concern can be addressed through a protective order. *Id.* at 6.

"Ordinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the document sought." *Ezell v. Parker,* No. 2:14-CV-150-KS-MTP, 2015 WL 859033, at *1–2 (S.D. Miss. Feb. 27, 2015) (quoting Wright & Miller, Federal Practice and Procedure, Civil 3d § 2459; *see also Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir.1979)). A party has standing to challenge a subpoena issued to a non-party if the subpoena seeks proprietary, confidential, or protected information ***sensitive to the party***. *See, e.g., Old Towne Dev. Grp., L.L.C. v. Matthews,* 2009 WL 2021723, at *1 (M.D.La. July 9, 2009) (finding that a party had standing to challenge a subpoena issued to a bank because he claimed a legitimate privacy interest in the requested bank records). *Id.* Here, Defendant expresses concern regarding the confidentiality of the information sought. Presumably, that concern is related to the personally identifiable information of policyholders.[7] Defendant has not asserted that the subpoena in question seeks propriety, confidential or protected information **s**ensitive to Defendant, nor has Defendant claimed a personal right or privilege related to the information sought.

---

[7] Defendant merely states "Liberty objects on the basis that any such information is confidential." *See* Motion to Quash Subpoena Duces Tecum [23] at 3.

Upon due consideration, the Court denies the motion, noting that Defendant has not made a sufficient showing that, as a third party, it indeed has standing to challenge the subpoena issued to Ross & Yerger.

The instant Motion to Quash [23] is hereby denied for lack of standing. As such, Plaintiffs may proceed with their subpoena to Ross & Yerger. However, they are ordered to amend the request to comport with the Court's above order limiting the geographical search area to a one-mile radius of Plaintiff's home and to paid claims. The subpoena itself directs Ross & Yerger to "redact confidential/personal information, if any." Said confidential/personal information should include names, social security numbers, dates of birth, bank account or credit card numbers, and similar personally identifying information; policy numbers, policy types and physical addresses must not be redacted. The parties are also ordered to enter into a protective order to ensure additional safeguards to protect the privacy interests of the affected policyholders. Said protective order should include provisions which specify that the information obtained shall not be disseminated or used in any way outside of the instant case, that the information obtained shall be designated as "Attorney Eyes Only,"[8] and that the information obtained shall be destroyed by the Plaintiffs upon termination of this litigation.

### III.    A Note to the Parties

The parties are directed to adhere to the procedural rules regarding discovery matters. The Court specifically notes the following:

---

[8] The court notes that, as used herein, an "Attorney Eyes Only" designation typically means that only certain categories of persons/entities are permitted to review and receive the material, including counsel for the parties and their respective current employees/agents who have responsibility for the instant case; experts and consultants of the parties who are being retained or consulted for the sole purpose of assisting in the instant case; the court and court employees, court reporters, videographers and members of the jury at the trial of the instant case; or other persons, only by written consent of the producing party or upon order of the Court and on such conditions as may be agreed or ordered.

- The Court strongly admonishes the parties to make every effort to confer in good faith before contacting the Court regarding discovery disputes. The Court reminds the parties that exchanging a flurry of letters and emails, without more, does not satisfy the good faith conferral requirement. The Court expects the parties to have conferred via telephone or via an in-person or video meeting prior to seeking court intervention. Upon requesting a conference with the Court, parties should be prepared to provide the Court with a certification signed by both parties which sets forth (1) how the good faith conference was scheduled and agreed upon, (2) who participated in the conference, (3) when the conference took place, (4) whether the conference was conducted by phone, by video, or in person, (5) the duration of the conference, (6) the specific, itemized topics that were addressed at the conference, (7) whether any issues were resolved by the parties, and, if so, the terms of the resolution, and (8) a list of any issues that remain unresolved. Participants in the good faith conference will be required to attend the conference with the Court, once scheduled.

- The Court shall strike written discovery motions without prejudice if a conference with the Court has not been held, unless the Court has notified the parties that it expressly waives the requirement.

- This Court expects the parties to respond to one another within a reasonable amount of time. Although the Court recognizes the occasional impracticability in being able to provide a same-day response, the Court believes (and expects) that responses should not be unreasonably delayed. The Court frowns upon spending its time and resources to direct a party to timely respond to an inquiry from counsel

opposite, rather than assisting the parties with navigating justiciable disputes. A timely response (even if that response indicates that the message has been received, and that counsel will return the message by a date and time certain) is a simple matter of professional courtesy and civility, and is expected by this Court.

- Similarly, the Court expects the party seeking Court intervention to have allowed counsel opposite a reasonable amount of time to respond to their inquiries. Again, a same-day response may be impracticable.

- While it should go without saying, the Court is compelled to remind the parties that, once this Court issues a ruling, the parties are to respect and comply with the Court's orders.[9] Parties are cautioned against ignoring this Court's orders and disregarding deadlines set by this Court. The Court reminds the parties that, if a deadline cannot be met, a party should seek an appropriate extension of time from the Court rather than unilaterally deciding to comply at the party's convenience.

- The Court understands and appreciates counsel's duty to effectively represent their clients' interests and to do so in a zealous manner. However, the Court reminds counsel of the simultaneous duty to conduct themselves in a professional manner, best calculated to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

- Sanctions have not been sought by either party to date, and none are awarded today.

## **CONCLUSION**

IT IS THEREFORE ORDERED AND ADJUDGED, that Plaintiffs' *ore tenus* Motion to

---

[9] "A text-only order carries the same weight and authority as a written order signed by the judge." Administrative Procedures for Electronic Case Filing in the United States District Court for the Southern District of Mississippi (March 2025), Section 5 (A).

Compel is hereby GRANTED in part and DENIED in part, in accordance with the foregoing, and the Court ORDERS the following relief:

1) Liberty is directed to supplement its responses to Requests for Production Nos. 22 and 23 and to produce, by October 15, 2025, its claims files for all paid claims involving hail damage occurring on April 9, 2024 and/or April 10, 2024, within a one-mile radius of the location of the Sterlings' home.

2) Liberty shall redact personal information such as names, social security numbers, dates of birth, bank account or credit card numbers, and similar personally identifying information; policy numbers, policy types and physical addresses must not be redacted. The parties are also ordered to enter into a protective order to ensure additional safeguards to protect the privacy interests of the affected policyholders. Said protective order should include provisions which specify that the information obtained shall not be disseminated or used in any way outside of the instant case, that the information obtained shall be designated as "Attorney Eyes Only,"[10] and that the information obtained shall be destroyed by the Plaintiffs upon termination of this litigation.

IT IS FURTHER ORDERED AND ADJUDGED, that Defendant's Motion to Quash [23] Subpoena Duces Tecum is hereby DENIED. Plaintiffs may proceed with their subpoena to Ross & Yerger. However, they are ordered to amend the request to comport with the Court's above order limiting the geographical search area to a one-mile radius of Plaintiff's home and to paid claims. The subpoena itself directs Ross & Yerger to "redact confidential/personal information, if any." Said confidential/personal information should include names, social security numbers, dates of birth, bank account or credit card numbers, and similar personally identifying information;

---

[10] *See supra,* n. 8.

policy numbers, policy types and physical addresses must not be redacted. The parties are also ordered to enter into a protective order to ensure additional safeguards to protect the privacy interests of the affected policyholders. Said protective order should include provisions which specify that the information obtained shall not disseminated or used in any way outside of the instant case, that the information obtained shall be designated as "Attorney Eyes Only,"[11] and that the information obtained shall be destroyed by the Plaintiffs upon termination of this litigation.

**SO ORDERED** this the 26th day of September 2025.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE

---

[11] *Id.*