**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**TIMOTHY J. STERLING and SARAH A. STERLING** **PLAINTIFFS**

**v.** **CIVIL ACTION NO. 3:25-cv-00097-HTW-LGI**

**LIBERTY MUTUAL GROUP, INC.**
*d/b/a Safeco Insurance Company, et al.* **DEFENDANTS**

# ORDER

Before the Court are Plaintiffs Timothy J. Sterling and Sara A. Sterling's ("Plaintiffs" or "the Sterlings") Motion to Compel [70] and Defendant Liberty Mutual Group, Inc.'s ("Defendant" or "Liberty") Motion for Leave to File Sur-Reply to Plaintiff's Motion to Compel [113]. In their initial Motion to Compel [70], Plaintiffs seek production of Liberty's "post-litigation" claims file, or alternatively, the production of a privilege log. They also move to compel the deposition of Tamarie Steen, "the adjuster who authorized payment of the claim." Doc. No. [71] at 1. Defendant files a Response in Opposition, "submit[ting] that answering discovery requests on the issue is the only appropriate manner to proceed[,] . . . and indicating that "Defendant is in the process of supplementing its discovery responses addressing this." [98] at 2.

Plaintiffs file a Reply, acknowledging that Defendant has now supplemented its interrogatory responses, "explaining the reason payment was belatedly made." [107]. However, Plaintiffs reject this compromise, arguing that the supplementation is "not enough." Plaintiffs reassert their entitlement to Liberty's post-litigation "claims file and corresponding investigation of Liberty employees who made the reversal decision," and they add a request for Rule 37 sanctions against Liberty. [107] at 2, 13. Liberty moves for leave to file a sur-reply, as it contends, "Plaintiffs' reply contains several new items which Defendant should be afforded an opportunity

to address." [113] at 1. Defendant attaches its proposed sur-reply as an exhibit. *See* [113-1], Exhibit "1". Plaintiffs file a Response in Opposition [114] to the motion for leave to file sur-reply, and Defendant files a Reply in support [125].

The Court, having considered the submissions, the record and relevant law, finds that the Motion to Compel [70] is GRANTED in part and DENIED in part, and the Motion to file Sur-reply is GRANTED, as discussed below.

## I. Standard

This Court has broad discretion over discovery disputes concerning the scope of discovery. *See Hernandez v. Causey*, 2020 WL 5412486, at *3 (S.D. Miss. Sept. 9, 2020) (quoting *Freeman v. United States*, 566 F.3d 326, 341 (5th Cir. 2009) ([i]t is well established that the scope of discovery is within the sound discretion of the trial court.")); s*ee also Saucier v. Lakeview Corp.*, 2014 WL 12906612, at *1 (S.D. Miss. Dec. 30, 2014) ("[a] district court has "broad discretion" to control the procedure for obtaining discoverable material.").

In reviewing a motion to compel, courts must consider that discovery rules "are to be accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 177, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979). "At some point, however, discovery yields diminishing returns, needlessly increases expenses, and delays the resolution of the parties' dispute." *Willis v. City of Hattiesburg*, No. 2:14-cv-89-KS-MTP, 2016 U.S. Dist. LEXIS 30985, 2016 WL 918038, at *2 (S.D. Miss. Mar. 10, 2016). Indeed, "[d]iscovery is not a license for the [parties] to 'go fishing' and is limited to information that 'is relevant to any party's claim or defense.'" *Barnes v. Tumlinson*, 597 Fed. App'x 798, 799 (5th Cir. 2015) (*citing Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978); Fed. R. Civ. P. 26(b)(1)). "Finding a just and appropriate balance in the discovery process" is thus one of

the Court's key responsibilities. *Willis*, 2016 U.S. Dist. LEXIS 30985, 2016 WL 918038, at *2.

Rule 26(b)(1) provides that information is within the scope of discovery if it is not privileged, is relevant, and proportional to the needs of the case:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Meanwhile, Rule 26(c) empowers the Court to control the procedure for obtaining discoverable information. *Saucier*, 2014 WL 12906612, at *1.

Finally, Rule 37 provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" and it authorizes the Court to issue an order compelling the production of such information. Fed. R. Civ. P. 37(a)(4).

## II. Argument

Plaintiffs move to compel Liberty's "post-lawsuit" claims file, or alternatively a privilege log. They also request an order compelling Liberty to produce Claims Specialist Tamarie Steen for deposition. Plaintiffs set forth the following factual background as grounds for the instant motion:

> In this case, six months after the Sterlings sued Liberty for twice denying their hail claim, and within three days of a live hearing on the discoverability of Liberty's payment of other claims for "hail in the area," Liberty for the first time told the Sterlings it would pay the claim. *See* Ltr. from H. Bailey to C. Welch (Aug. 11, 2025), attached as Exhibit 1. Liberty then issued a check to the Sterlings in the amount of $306,756. *See* Check, attached as Exhibit 2.

Doc. [71] at 3. Based on this factual timeline, Plaintiffs believe "Liberty's claims handling is subject to discovery" and believe they "are entitled to discover why Liberty paid a claim that it

had twice denied and what investigation was conducted to reverse the denial decision." *Id*.

***a. Plaintiffs' Motion to Compel***

Plaintiffs declare that Liberty's post-lawsuit claims file is discoverable here, because the insurance company continued adjusting the claim and ultimately paid the claim after the instant lawsuit was filed. *Id*. at 2; *see also* [107] at 1. Thus, they seek production of Liberty's claims file, from the timeframe of February 10, 2025 – when this lawsuit was filed – through August 11, 2025. *Id*.[1] In support of this assertion and their request, Plaintiffs rely on the Mississippi Supreme Court's holding in *Gregory v. Cont'l Ins. Co*., 575 So. 2d 534, 542 (Miss. 1990), arguing that "an "[i]nsurance carrier's duty to promptly pay a legitimate claim does not end because a lawsuit has been filed against it for nonpayment." *Id*.

Plaintiffs also move to compel Liberty to produce the claims specialist for deposition. [71] at 5. Plaintiffs seek the deposition of Tamarie Steen, noting that she was the adjuster from February 2025 until the date the claim was paid, and that she authorized the payment. *Id*. Plaintiffs seek testimony as to how the claim was adjusted, and they challenge Liberty's refusal to produce Ms. Steen on the grounds that she is a part of Liberty's legal department. *Id*. Plaintiffs argue Ms. Steen's employment in the company's litigation department does not shield the discoverability of the information. *Id*. (citing *Travelers Property Casualty Company of America v. 100 Renaissance, LLC*, 308 So. 3d 847, 854-55 (Miss. 2020).[2]

Liberty files a Response in Opposition [97], asking the Court to prohibit the requested

[1] The date on which Liberty's counsel advised that Defendant would pay the claim. *See* Doc. [70-1], Letter from F. Hall Bailey to Plaintiffs, dated August 11, 2025; *see also* [70-2], copy of check stub from Liberty addressed to Plaintiffs and their counsel.

[2] Plaintiff interprets the Mississippi Supreme Court's holding and provides the following: "in bad faith cases, '… insurers [must] have an arguable or legitimate basis to deny an insurance claim,' and, in turn, the insured is entitled to 'understand [the insurer's] reasons, or arguable or legitimate basis, to deny the claim.'" *100 Renaissance, LLC*, 308 So. 3d at 854-55. Upon review, the Court notes this portion of the opinion provides: "Mississippi law requires that insurers have an arguable or legitimate basis to deny an insurance claim." *Id*.

discovery and instead require that the Defendant supplement its written discovery responses with an explanation of the payment. Doc. [97] at 1.[3] Liberty insists that the information sought is protected by attorney/client privilege and/or the work product privilege. Doc. [98] at 1. It submits "everything that occurred following Defendant's receipt of this suit was clearly privileged work product generated not only in anticipation of litigation but in the direct defense of litigation." *Id.* at 3. While it agrees "that Plaintiffs should be able to discover, in a limited fashion, and without waiving privileges, generally why the payment was made in August of 2025[,]" it objects to any discovery extending to the post-suit claims file or to the production of a privilege log. Doc. [98] at 1.

Liberty says Ms. Steen is a Senior Litigation Claims Specialist, who is also an attorney, but it avers her involvement in this matter was limited and only arose post-suit, as she is the claims specialist working with counsel to defend the lawsuit. Doc. [98] at 3. While Ms. Steen reviews and analyzes claims in litigation and has the authority to settle claims, Liberty states she is not an "adjuster." Thus, it argues Ms. Steen's "entire involvement here is privileged work product in the defense of this case," and therefore it argues her deposition should not be permitted. *Id.*

Liberty further argues it has done nothing to waive attorney-client privilege, as it has neither produced privileged communications nor asserted the advice of counsel defense. *Id.* at 4. It also contends the "post-suit litigation file and activities of Defendant in this case is text-book work product . . . only generated in the defense of this suit seeking punitive damages." *Id.* at 5-6. As such, Liberty seeks protection from the request that it be compelled to produce the subject "litigation file" and its claims specialist for deposition. *Id.* at 6. Liberty also challenges Plaintiffs' reliance on *Gregory* to compel "these privileged materials." *Id.* Specifically, Defendant contests

[3] After filing its Response [97], Liberty supplemented its written discovery responses to provide said explanation. The supplement is addressed in greater detail below.

Plaintiffs' application of *Gregory*, arguing the principle "that a carrier has an ongoing duty to pay a legitimate claim, is a doctrine typically utilized when a carrier does ***not*** pay during the litigation or does so on the eve of trial." *Id*. (Emphasis in original). Liberty says that it has always maintained that the subject storm did not cause the hail damage in question, but regardless of this contention, it has now paid the claim. *Id*.

The *Gregory* court provides, "if you owe a debt the duty to pay does not end when you are sued for nonpayment[.]" Defendant says the opposite happened here. *Id*. Defendant asserts that, regardless of Liberty's continued belief that the subject storm did not cause the hail damage in question, the company paid the claim. *Id*. at 6. Liberty further distinguishes *Gregory* from the instant case by noting that the insurer in *Gregory* did not pay the claim until two days before trial, prompting the Mississippi Supreme Court's statement that the "[insurer] owes some explanation for failure to pay the claim after the complaint was filed . . . giving some legitimate or arguable reason for the delay." *Id*. at 7 (quoting *Gregory* at 542). Thus, Liberty suggests "the appropriate course is for the company to answer discovery explaining why it issued payment when it did[,]" which it has now done. *Id*. [4]

Unlike the circumstances in *Gregory*, where the insurer "did not pay the claim until two days before trial[,]" Liberty notes that it has now paid the claim. *Id*. Liberty submits that it initially investigated and paid Plaintiffs' wind claim, involving damage from a tree falling on their house. [98]. But, when the Sterlings added a hail damage claim, the insurance company denied the subsequent claim, pursuant to an independent inspection by an engineer. *Id*. at 2. Defendant maintains that Plaintiffs "never retained . . . their own engineer to contradict this" and did not

[4] After filing its response in opposition, Liberty supplemented its response to Interrogatory No. 13, to "fully explain[] why it issued the payment in August of 2025." *See* Liberty's Sur-reply to Plaintiff's Motion to Compel, Doc. [113-1], Exh. "1".

present anything else for Defendant to consider while investigating the hail claim before filing the instant lawsuit. *Id*. at 2-3. *Id*. Since learning of the lawsuit, Liberty says it was not only anticipating litigation, but it was also "actively defending an aggressive litigation." *Id*. Therefore, it argues that everything that occurred following receipt of the lawsuit was clearly privileged work product generated in anticipation of litigation and in direct defense of litigation. *Id*. at 3.

Even though Liberty has explained why it ultimately paid the hail claim, Plaintiffs still seek production of the insurer's post-litigation claims file and the deposition of the claims handler. Plaintiffs' Reply, [107]. They contend Liberty's continued adjustment of their claim and its reversal of the denial decision, after the lawsuit was filed, places Liberty's post-litigation claims handling directly at issue, at least through the date Liberty covered the claim. [107]. Plaintiffs assert Liberty's supplemental discovery response "is a start" but they are still due the claims file and corresponding investigation of employees who made the reversal decision. *Id*. at 2. Plaintiffs say it is apparent that Liberty considered additional information and decided to reverse its decision, so they are entitled to discover everything that was considered. *Id*. at 3. Plaintiffs argue Liberty cannot claim privilege and simultaneously refuse to provide a privilege log. *Id*. They also contend Liberty's failure to provide the privilege log constitutes waiver. *Id*.

Plaintiffs reject Liberty's "artfully drafted [supplemental] response" stating the reason it reversed course. *Id*. at 4. They insist that they must be allowed to challenge Liberty's assertion of their affirmative defense[5] that it satisfied its obligations under the policy and to investigate and adjust covered losses under the policy. *Id*. at 4. (citing Defendant's Fourth Defense in Answer, [5] at 11). Plaintiffs offer some examples of the information they are entitled to know, including:

(i) when the decision was made;

---

[5] Parties use "affirmative defense" and "defense" interchangeably throughout the briefing. The Court reads the references as referring to the same clause(s) in Defendant's Answer [5].

(ii) who was involved in the decision, and who authorized it;

(iii) how the decision was made; and

(iv) what facts were considered in making the decision.

*Id*.

Moreover, Plaintiffs argue Defendant has now waived privilege by producing supplemental discovery responses, stating the reason for payment. *Id*. at 8. They contend Liberty cannot selectively disclose some of this information while shielding the rest of it behind claims of privilege that do not apply. *Id*. at 4. The Sterlings argue that "a litigant [i.e., an insurance company] cannot assert a defense based on the contention that it acted reasonably because of what it did . . . and then use the privilege to preclude the other party from ascertaining what it actually learned and knew." *Id*. at 5 (quoting *Travelers Property Casualty Co. of America v. 100 Renaissance, LLC*, 308 So. 3d 847, 845-55 (2020)).

Plaintiffs accuse Defendant of doing precisely what *100 Renaissance* prohibits – asserting a good-faith affirmative defense and promising to disclose the reasons it paid the claim, but hiding "what it actually learned and knew" under a claim of privilege. *Id*. Plaintiffs state they are not attempting to invade the attorney-client privilege. *Id*. Rather, they are seeking discovery of information regarding their insurer's claims handling. *Id*. Plaintiffs submit that Liberty is impermissibly using privilege as a sword and a shield. *Id*. at 7. It points to Defendant's own representation that the reason Liberty paid the claim during litigation is privileged, and they note that Liberty's Rule 30(b)(6) witness refused to answer questions about why Liberty paid the claim, also asserting privilege. *Id*.

In closing, Plaintiffs reiterate their requested relief. They urge the Court to order Liberty to produce its post-litigation claims file (without redactions) or alternatively to provide a privilege

log. *Id*. at 12-13. They also ask the Court to compel Liberty to produce Tamarie Steen for deposition. *Id*. "As a corollary, and because Liberty has continually forced the Sterlings to seek this Court's assistance in obtaining basic discovery," Plaintiff add a request for an award of costs and reasonable attorney's fee, under Rule 37(a)(5). *Id*.

***b. Defendant's Motion for Leave to File Sur-Reply***

Defendant moves for leave to file a sur-reply to Plaintiffs' Reply, asking that it be allowed to respond to the new items raised by Plaintiffs. [113]. Defendant attaches a copy of the proposed sur-reply for consideration. Liberty first notes that it supplemented its discovery responses prior to Plaintiffs' serving their Reply. *Id*. It states the supplemental responses explained the reason a payment was made, and it accuses Plaintiffs of only addressing a portion of Liberty's explanation in their Reply. *Id*. It also desires to refute Plaintiffs' claim that the supplemental explanation serves as a privilege waiver. *Id*. Further, Defendant says Plaintiffs cite "out of context" deposition testimony that they did not address in their original motion, and they now seek fees and costs. *Id*.

In its proposed sur-reply, Defendant includes the full text of the subject supplemental interrogatory response that it says Plaintiff purposely abbreviates in its Reply. Defendant says the Plaintiffs claim they need to know why the payment was made, but it retorts that the supplemental response supplies this. [113-1] at 2. Defendant argues Plaintiffs are dissatisfied with the explanation, so now they claim waiver of privilege. *Id*. But, Defendant asserts this is not so, as it has not placed privileged communications with counsel or post-suit work product at issue and it never produced any of it. *Id*. Rather, it merely provided an explanation for the payment. *Id*.

Regarding Plaintiffs' claims that Defendant's fourth affirmative defense placed its conduct at issue and supports waiver of privilege, it opposes the contention and argues that the subject defense was filed in its answer at the outset of the case and applies to pre-litigation events. *Id*. at 3. Defendant says this cannot be construed as waiver, and it moves the Court to permit withdrawal

of this defense if the Court finds otherwise. *Id*. For additional support, Liberty points to its sixteenth defense, which provided, "[p]leading of any matter as a defense or affirmative defense is not an admission that Liberty bears the burden of persuasion, burden of proof, or burden of producing evidence. . . ." *Id*.

Defendant also submits that Plaintiffs' reference to Liberty's corporate deposition is disingenuous here. *Id*. Liberty asserts it raised objections to specific categories in Plaintiffs' notice of deposition of Liberty's corporate representative. *Id*. According to Defendant, prior to the Rule 30(b)(6) deposition, the parties discussed the dispute and "agreed that Defendant would put up a witness to answer questions about items not in dispute," not a witness to address post-litigation privileged items. *Id*. Besides, Liberty states it submitted the supplemental discovery responses, providing an explanation for the payment, without disclosing or violating privileges. *Id*. at 3-4. If this Court permits Ms. Steen's deposition or requires further explanation of the payment by Liberty's corporate representative, Defendant urges the Court to bar inquiries on privileged, post-suit matters, including work product and attorney-client communications. *Id*. at 4.

Defendant argues that Plaintiffs' request is an over-reaching, unprecedented demand for privileged information. *Id*. "While Defendant believes neither party should be required to produce privileged, post-suit information generated in accordance with the suit, Defendant has now similarly requested Plaintiffs' post-litigation materials so that all parties will be treated consistently." *Id*. at n. 2. Finally, Defendant asks that Plaintiffs' "new request" for fees and costs be denied. *Id*. Defendant contends Plaintiffs only cite a portion of Rule 37, but it argues the relief sought is improper, unreasonable and not justifiable under a full reading of the rule. *Id*.

Plaintiffs respond, asserting that Defendant's sur-reply is unwarranted and "heavily disfavored." [115] at 1. (Citation omitted). Plaintiffs also provide their response to Defendant's

proposed sur-reply. In their response, Plaintiffs restate their previous arguments. Notably, they maintain that if Liberty believed that certain information in Ms. Steen's claims file was privileged, it should have produced a privilege log, pursuant to Rule 26(b)(5), identifying such privileged information. *Id*. at 4. And the failure to do so constitutes waiver of the privilege. *Id*. They also repeat their belief that Liberty waived privilege by disclosing information that it initially claimed was privileged – the reason Liberty paid. *Id*. (quoting email from Liberty's counsel and noting that Liberty's corporate designee refused to answer questions about the payment). Subject to this alleged waiver, Plaintiffs move to compel the entire post-lawsuit claims file as well as the production of adjuster Tamarie Steen for deposition. *Id*. at 5. Plaintiffs also maintain that Rule 37's mandatory fee applies here. And they state Defendant's offer to withdraw the affirmative defense at issue would presumably be an admission of bad faith. *Id* at n. 7.

The gist of Defendant's Reply in support of its Motion for Leave to File Sur-reply is that Plaintiffs seek to punish Defendant no matter what it does. [125], n. 1. Defendant says Plaintiffs demanded a reason for the payment, Liberty provided it, and now Plaintiffs claim the explanation waives all of Defendant's privileges. *Id*. Likewise, Plaintiffs argue one of Defendant's defenses in their Answer also amounts to waiver of privileges. And now that Defendant offers to withdraw the defense, if allowed, Plaintiff will contend this is an admission of bad faith. *Id*.

## III. Analysis

Plaintiffs move to compel the production of Liberty's post-litigation claims file (without redactions) or alternatively a privilege log, specifically relating to Liberty's post-lawsuit payment of the Sterlings' hail claim. Likewise, Plaintiffs seek to depose the insurance claims handler that made the decision. The Sterlings also seek an award of costs and reasonable attorneys' fees, under Rule 37(a)(5), for the inconvenience of having to bring the instant motion to compel.

Defendant vehemently opposes Plaintiffs' requests, asserting the protection of the work product and attorney-client privileges. As a solution to this dispute, Liberty suggests written discovery to allow Plaintiffs to seek additional information, without encroaching on the asserted protections. In a seemingly tit-for-tat maneuver, Liberty also requests Plaintiffs' post-litigation materials "so that all parties will be treated consistently." [113-1] at 4, n. 2.

Here, Plaintiffs rely heavily on two cases - *Gregory v. Cont'l Ins. Co*., 575 So. 2d 534, 542 (Miss. 1990) and *Travelers Property Casualty Company of America v. 100 Renaissance, LLC*, 308 So. 3d 847, 854-55 (Miss. 2020). Particularly, Plaintiffs rely on *Gregory* to force the production of Defendant's post-litigation claims file, from the date of litigation through the date of the subject payment. As quoted by Plaintiffs, *Gregory* indeed provides that "an "[i]nsurance carrier's duty to promptly pay a legitimate claim does not end because a lawsuit has been filed against it for nonpayment." 575 So. 2d 534, 542. However, the Court finds that the circumstances of *Gregory* are not analogous to the facts in this case. It takes this opportunity to add more factual context.

In *Gregory*, country club owners filed a lawsuit against their insurance company after the insurer refused to pay a claim for business interruption loss following a hurricane that left trees on the golf course. *Id*. The country club owners held a multiperil policy with Continental Insurance Company. *Id*. The insurance company paid the hazard loss claims for the destruction of the country club's maintenance building, building 1, and the swimming pool, but the insurance company did not pay the business interruption claim. *Id*. at 537. The owners filed a lawsuit against Continental, seeking $25,000 in actual damages, $250,000 in compensatory damages, and $700,000 in punitive damages. *Id*. After extensive discovery, and while the parties were preparing for the impending trial, counsel for the insurance company hand-delivered a check for $1,075.37 to the owners' counsel, as payment under the policy. *Id*. at 538.

Two days later, the trial commenced. *Id*. After testimony, and when the owners rested their case, the circuit judge acknowledged that the insurance company had admitted that there was business interruption insurance and that there was some interruption cost owed, so the circuit judge entered a directed verdict in favor of the owners as to the business interruption coverage. *Id*. But, the circuit judge sustained Continental's motion for directed verdict as to punitive damages. *Id*. The owners appealed.

The Mississippi Supreme Court agreed that no punitive damages arose from Continental's conduct prior to the suit being filed, but it opined that sufficient evidence was adduced to require the insurance company to offer a justification for not paying the claim for over a year after it was filed. *Id*. at 534. The state appellate court noted that the owners had failed to provide the insurance company with proof of the alleged loss, and therefore the insurance company "was never required under its insurance contract to make any payment unless and until the proof of loss provisions under the endorsement were satisfied." *Id*. at 540. In the opinion, there was some discussion as to whether the owners had ever received a letter detailing the insurance company's position on the claim, and it was noted that the circuit court had determined that the owners' failure to comply with the requirements of the policy was a complete defense to any punitive damages. *Id*. at 541. While the circuit judge held that the requirement had been waived, he never considered the insurance company's conduct following the lawsuit. *Id*. This is where the supreme court found error and issued the relevant quote, "an insurance carrier's duty to promptly pay a legitimate claim does not end because a lawsuit has been filed against it for nonpayment. Put more bluntly, if you owe a debt the duty to pay does not end when you are sued for nonpayment of it." *Id*.

The appellate court found that the insurance company, after suit was filed, should have recognized that some amount was owed from business interruption and communicated this to the

owners and brought this to the attention of the lower court for a ruling. *Id*. "Because Continental did not insist upon this obvious right which it had under the policy to receive documentation of the loss as a condition precedent to paying anything, but – as the circuit judge ruled – waived it, the question arises why it did not pay the claim [pre-suit]." *Id*. at 541-542. The supreme court noted that the lawsuit was filed on April 7, 1986, but no payment was made until September 12, 1987 – two days before trial. *Id*. at 542. From that, the court noted "that Continental owes some explanation for failure to pay the claim after the complaint was filed, and should have been required to go forward on its proof giving some legitimate or arguable reason for the delay." *Id*. The matter was then remanded for determination of reasonableness or arguable reason for Continental's conduct after suit was filed *Id*.

In the instant case, Liberty challenges the requests for its post-litigation claims file and for a deposition of its claims specialist. Liberty points out that it investigated and paid Plaintiffs' wind claim, but it maintains that the denial of the claim for hail damage was justified. Liberty says it investigated the claim. It sought and relied upon the independent inspection of an engineer. It argues the Plaintiffs never retained their own engineer to contradict the report of Liberty's engineer, and that the Plaintiffs presented nothing for Liberty to consider in support of their hail claim. Despite this, Liberty ultimately paid the claim while maintaining that the subject storm did not cause the hail damage in question. This is precisely why Plaintiffs seek answers as to why Liberty reversed course and paid the claim.

While Liberty and the defendant in *Gregory* both paid the disputed claims after the lawsuits were filed, there are several distinctions. Liberty has shown that it investigated the Plaintiffs' claim pre-suit, has not admitted that the alleged loss occurred as claimed by Plaintiffs, and did not wait until the eve of trial to issue payment. In fact, during briefing on this issue, Liberty supplemented

its interrogatory responses to provide the requested explanation for the payment. The supplemental response to Interrogatory 13 provides:

> **SUPPLEMENTAL RESPONSE:** Defendant incorporates by reference its prior objections and response. By way of supplementation, the insureds initially presented a claim for wind damage occurring on April 10, 2024 and subsequently presented a hail claim for the loss date of April 9-10, 2024. The company believes and maintains the adjuster pre-suit reached a reasonable, appropriate decision based upon the policy, claim investigation and the independent judgment of a professional engineer that the hail damage in question was not caused by the April 9-10 storm. Since suit was filed, the company determined that, due to EFI's indication that the hail damage likely occurred the year prior to the date of loss, the loss could be considered covered under the prior year's policy even though no claim was presented then, even though the company therefore had no opportunity to confirm whether the damage indeed occurred in the prior year or previously, even though the EFI report did not state that the loss definitely occurred in the year prior, and even though the insureds continued to be adamant that the loss occurred April 9-10, 2024. Accordingly, the company made a payment of $306,756.00 for the claimed roof repairs even though that was and is not the claimed loss date presented by the insureds. This payment should not be construed as an admission that the adjuster reached the wrong decision that the damage in question did not occur on April 9-10, 2024. The company continues to believe and maintain that determination was reasonable and appropriate. If Plaintiffs claim additional items are owed under the contract following that payment, they are invited to present them for consideration.

[113-1] at 1-2; see also [107-1] at 2.

Importantly, Liberty's supplemental response, provides in part, "since suit was filed, the company determined that, due to EFI's indication that the hail damage likely occurred the year prior to the date of loss, the loss could be considered covered under the prior year's policy even though no claim was presented then[.] . . ." *Id*. Despite this explanation, Plaintiffs suspect there is more to the account offered by Liberty, and they seek production of Defendant's post-litigation claims file and the deposition of Ms. Steen to test their suspicions. Liberty, of course, objects based on work product – asserting the file and activities of Defendant were only generated in defense of this lawsuit, seeking punitive damages. And, it also says nothing was done to waive attorney-client privilege in this matter.

"In Mississippi, the attorney-client privilege is defined as the client's right to refuse to disclose and prevent others from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. . . ." *Doherty v. Shelter Mut. Ins. Co.*, No. 2:19-CV-1-KS-MTP, 2020 WL 1867992, at *1 (S.D. Miss. Apr. 14, 2020) (quoting Miss. R. Evid. 502(d) (internal quotations omitted)). The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby to promote broader public interests in the observance of law and administration of justice. *Id.* (Citations omitted).

The attorney-client privilege "was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir.1989) (quoting *Pitney–Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D.Fla.1980)). Waiver of privilege requires an affirmative act to put the advice of counsel at issue. *In re Itron, Inc.*, 883 F.3d 553, 569, n. 6 (5th Cir. 2018). Liberty fervently contests that any such waiver of privilege occurred. It has maintained that Liberty has done nothing to waive attorney-client privilege, as it has neither produced privileged communications nor asserted the advice of counsel defense.

Further, under Rule 26(b)(2)(C), discovery may be limited if: "(3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1)." Citing Fed. R. Civ. P. 26(b)(2)(C). Pursuant to Rule 26(b)(3):

> [A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discoverable if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial equivalent by any other means.

Fed. R. Civ. P. 26(b)(3). Rule 26(b)(3) further provides that if the court orders discovery of the material described above, "it must protect against disclosure of the mental impressions,

conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). By operation of the Rule, a party cannot obtain counsel's work product unless it shows a substantial need of the materials to prepare its case, and that it cannot obtain the substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A).

Upon consideration, the Court is not persuaded that Plaintiffs are entitled to Liberty' post-litigation claims file, as it has not shown a substantial need of the materials to prepare its case. The information sought can be ascertained by other means – written discovery. Further, it is highly likely that the vast majority of the subject claims file contains privileged information, generated in the defense of the lawsuit. Notably, Plaintiffs have shown no affirmative act by Liberty that placed advice of their counsel at issue, warranting a finding that privilege was waived.

Upon receipt of Plaintiffs' lawsuit, Liberty's legal department became involved. To some extent, it is understood that once a lawsuit is filed there can be no extrication of the post-suit claims file, without breaching the attorney-client privilege or the work product privilege, as all focus becomes litigation-related. Here, Plaintiffs specifically seek production of the "unredacted" post-litigation claims file, or a privilege log. Neither request is reasonable, as the Court anticipates the volume of redactions and a privilege log of the entire post-litigation claims file would be burdensome and disproportionate to the needs of the case. As such, the Court declines to grant Plaintiffs' motion to compel production of the post-litigation claims file. It also denies the request for an order compelling Liberty to provide a privilege log as to the contents of the file.

While the Court finds that production of the claims file and privilege log are inappropriate, it does, however, believe that Liberty owes Plaintiffs further explanation for its decision to pay the claim after having twice denied it prior to the lawsuit (i.e. continued adjustment of the claim post-suit). Although Liberty provided a reason for the payment, Plaintiffs are entitled to explore and

challenge Liberty's stated reason – without encroaching on attorney-client privilege or invading the work product privilege. Liberty concedes "that Plaintiffs should be able to discover, in a limited fashion, without waiving privileges, generally why the payment was made." [98] at 1. And Plaintiffs set forth several questions it would like answered, including the five questions set forth *supra* at pages 7-8. Plaintiffs would also like to discover: (1) why Liberty paid a claim that it had twice denied, (2) what investigation was conducted to reverse the denial decision, (3) additional information that Liberty considered when it decided to reverse its decision, (4) what Liberty actually learned and knew, and (5) other information regarding the insurer's claims handling. Thus, the Court grants Plaintiffs an opportunity to conduct written discovery on these issues.

The Court permits Plaintiffs to seek the information sought through written discovery requests to Liberty. The Sterlings may propound no more than ten (10) interrogatories and no more than five (5) requests for production of documents to Liberty, narrowly tailored to the information sought regarding Liberty's decision to pay the claim. Plaintiffs are to serve the interrogatories and requests for production of documents within seven (7) days of this order, and the responses are due within fourteen (14) days of receipt. Liberty is ordered to produce a privilege log for any response in which it asserts a privilege as to this limited topic. Parties are also directed to confer in good faith regarding any topic or requests that garner an objection.

As to Plaintiffs' motion to compel the deposition of Liberty's claims specialist Tamarie Steen, the Court finds that Ms. Steen's deposition is relevant but not proportional to the needs of the case at this juncture. Rule 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Notably, such information within the scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Liberty objects to the deposition of Ms.

Steen, arguing that she is an attorney, working as a senior litigation specialist in the company's litigation department. Defendant contends her very involvement in the case began after the lawsuit was filed, and her post-suit claims handling is therefore privileged work product.

The Court does not find that Ms. Steen's position alone, as a litigation claims specialist and attorney working in Liberty's legal department, shields her from deposition. She is shielded because her claims handling, as represented by Liberty, only attached after the lawsuit was filed, and specifically for the purpose of handling the Plaintiffs' claim post-suit, which is entirely indicative of protected work product in defense of the lawsuit. In support of its motion to compel the deposition of Ms. Steen, Plaintiffs rely on *Travelers Prop. Cas. Co. of Am. v. 100 Renaissance, LLC*, 308 So. 3d 847 (Miss. 2020), but this case is easily distinguishable. The court in *100 Renaissance* found implied waiver of attorney-client privilege when Travelers specifically placed at issue the attorney-client relationship and permitted opposing counsel to depose Traveler's in-house counsel about his decision to deny coverage, after it was determined that in-house counsel made the decision to deny coverage and prepared the letter for the adjuster. *Id*. To the contrary, here, Plaintiffs have not put forth any evidence that Liberty disclosed privileged communications regarding its claims decision, either before or after the lawsuit was filed. Consequently, the Court denies the motion to compel the deposition of Ms. Steen.

Furthermore, the Court finds that other means exist to obtain any relevant and non-privileged information sought regarding the post-litigation claims file. Particularly, the Court orders that the Rule 30(b)(6) deposition of Liberty be re-opened for the limited purpose of allowing Plaintiffs to inquire into Liberty's reason for paying the Sterlings' hail claim after the lawsuit was filed. Plaintiffs are directed to amend their 30(b)(6) deposition topics to comport with the issue before the Court and to serve same upon Liberty. Liberty is ordered to produce a corporate

representative, with sufficient knowledge, to respond without objection to Plaintiffs' inquiries regarding Defendant's post-litigation payment. Plaintiffs are ordered to restrict their line of questioning to non-privileged information regarding the subject payment. The deposition shall be taken by or before September 14, 2026.

As to Plaintiffs' request for an award of fees and costs associated with bringing their Motion to Compel, the Court denies the request. Having considered the parties' respective positions, the Court finds that Defendants' objections were substantially justified and reflected a legitimate discovery dispute. In light of the reasonable basis for Defendants' position, the Court declines to apportion fees and costs. Each party shall bear its own expenses associated with the motion to compel.

**IV. Findings**

The Court has considered all arguments. Those not addressed would not have changed the outcome.

1. Plaintiffs' Motion to Compel [70] is GRANTED IN PART AND DENIED IN PART.
    a. The Court DENIES the motion to compel production of the post-litigation claims file. It also DENIES the request for an order compelling Liberty to provide a privilege log as to the contents of the post-litigation claims file.
    b. However, the Court PERMITS Plaintiffs to seek the requested information through written discovery requests to Liberty. The Sterlings may propound no more than ten (10) interrogatories and no more than five (5) requests for production of documents to Liberty, narrowly tailored to the information sought regarding Liberty's decision to pay the claim. Plaintiffs are to serve the interrogatories and requests for production of documents within seven (7) days of this order, and the

responses are due within fourteen (14) days of receipt. Liberty is ordered to produce a privilege log for any response in which it asserts a privilege as to this limited topic. Parties are also directed to confer in good faith regarding any topic or requests that garner an objection.

c. Plaintiffs' motion to compel the deposition of Ms. Steen is also DENIED.

d. However, the Court ORDERS that the Rule 30(b)(6) deposition of Liberty be re-opened for the limited purpose of allowing Plaintiffs to inquire into Liberty's reason for paying the Sterlings' hail claim after the lawsuit was filed. Plaintiffs are directed to amend its 30(b)(6) deposition topics to comport with the issue before the Court and to serve same upon Liberty. Liberty is ordered to produce a corporate representative, with sufficient knowledge, to respond, without objection to Plaintiffs' inquiries regarding Defendant's post-litigation payment. Plaintiffs are ordered to restrict their line of questioning to non-privileged information regarding the subject payment. The deposition shall be taken by or before September 14, 2026.

e. Plaintiffs' Motion for Rule 37 costs and fees is DENIED, as the Court finds that Defendant's objections to producing its claims file and to producing Ms. Steen for deposition were substantially justified.

2. Defendant's Motion for Leave to File Sur-Reply is GRANTED [113]. This Court has fully reviewed and considered Defendant's proposed sur-reply and has taken it and all subsequent briefing into account in reaching its decision in this matter. To ensure clarity of the case docket, Defendant Liberty is directed to file its proposed Sur-Reply [113-1], attached as Exhibit "1" to the Motion, on or before August 26, 2026.

a. Defendant's reciprocal Motion for Plaintiffs' post-litigation materials is DENIED, as Liberty offers no support for the request, other than "so that all the parties will be treated consistently." The request and reasoning are inadequate to ascertain whether the information sought is relevant and proportionate to the needs of the case, as required by Rule 26(b)(1).

**V. Conclusion**

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Compel [70] is hereby GRANTED in part and DENIED in part, in accordance with the Court's findings above.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Sur-Reply [113] is hereby GRANTED, in accordance with the foregoing order. To ensure clarity of the case docket, Defendant Liberty is directed to file its proposed Sur-Reply [113-1], attached as Exhibit "1" to the Motion, on or before August 26, 2026.

The Court's ruling on all other requested relief is set forth above.

**SO ORDERED** this the 20th day of August, 2026.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE