**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**TIMOTHY STERLING and SARAH A. STERLING** **PLAINTIFFS**

**vs.** **CAUSE No. 3:25-CV-97-HTW-LGI**

**LIBERTY MUTUAL GROUP INC., d/b/a SAFECO INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; AMERICAN ECONOMY INSURANCE COMPANY; AND JOHN AND JANE DOES 3-10[1].** **DEFENDANTS**

---

**ORDER**

---

BEFORE THIS COURT are three (3) motions concerning expert testimony: (1), Plaintiffs Timothy J. Sterling and Sarah A. Sterling's Motion to Strike or Exclude Defendants' Experts and/or Expert Reports and Opinions **[ECF No. 161]**; (2), Defendant Liberty Mutual Group's Motion to Exclude the testimony of Plaintiffs' expert Cory Smith **[ECF No. 164]**; and (3), Defendant Liberty Mutual Group Inc.'s Motion for Leave to File a Limited Sur-Reply **[ECF No. 175]**. Defendants American Economy Insurance Company ("American Economy") and Liberty Mutual Insurance Company ("LMIC") later joined motions 164 and 175 [ECF No. 199].

[1] Plaintiffs' Complaint descries John and Jane Does 3–10, as unidentified individuals or related entities that allegedly participated in, or bear derivative responsibility for, the conduct at issue. Compl. ¶ 3 [ECF No. 1]. Plaintiffs have neither identified nor served these fictitious defendants; these fictitious defendants have not appeared; and no party contends that these fictitious defendants are indispensable to this action. The Court, therefore, dismisses John and Jane Does 3–10 without prejudice under Rule 21 of the Federal Rules of Civil Procedure, which provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Notably, the unknown citizenship of these dismissed fictitious parties does not affect this Court's diversity subject matter jurisdiction. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832–38 (1989).

Originally, Plaintiffs sued Liberty Mutual Group Inc. (“Liberty”), doing business as Safeco Insurance Company (“Safeco”), and John and Jane Does 1–10. Compl. [ECF No. 1]. American Economy was not a named defendant when Plaintiffs filed their Complaint. On March 26, 2026, the United States Magistrate Judge directed the Clerk of Court to substitute the corporate entity Liberty Mutual Insurance Company for John Doe 1 and American Economy for John Doe 2. Order [ECF No. 184]. Accordingly, the named corporate defendants herein are: Liberty Mutual Group, Inc. d/b/a Safeco; Liberty Mutual Insurance Company; and American Economy Insurance Company (collectively, “Corporate Defendants”). The Court refers to the Corporate Defendants and the Doe Defendants collectively as “Defendants”. Having reviewed the parties’ submissions, the record, and the governing law, this Court finds as follows.

## I. BACKGROUND

Plaintiffs Timothy J. Sterling and Sarah A. Sterling (“The Sterlings” or “Plaintiffs”) own a home at 4121 Crane Boulevard in Jackson, Mississippi. Compl. ¶ 6 [ECF No. 1]. The declarations for homeowners Policy No. OF3039712 (the “Policy”) identify American Economy Insurance Company as the issuing insurer. The declarations also identify American Economy as “A SAFECO Company,” reflecting that American Economy issued the Policy under the Safeco brand[2]. Policy Declarations [ECF No. 119-1 at 1]. The Policy provided coverage from May 17, 2023, through May 17, 2024. Id. This lawsuit features a dispute over whether certain hail damage to the Sterlings’ cedar-shake roof occurred during the Policy’s coverage period, and whether Defendants had a legitimate basis for denying the resulting insurance claim.

[2] “A SAFECO Company” does not mean that American Economy and Safeco are the same legal entity. Liberty Mutual Insurance Group identifies American Economy as one of several separate underwriting companies that issued Safeco-branded policies; each underwriting company remains legally responsible for the policies it issued. *See* Liberty Mutual/Safeco Terms and Conditions.

The Sterlings allege that a storm on April 9 and 10, 2024, damaged their home and personal property. Compl. ¶ 8 [ECF No. 1]. By April 22, 2024, they had notified Safeco of the loss. Id. ¶ 9. Safeco sent field adjuster Cory Hill and another individual, Zach Longgrear, to inspect the property on May 4, 2024. Hill did not climb onto the roof; the other individual did. According to the Complaint, the inspection lasted less than thirty minutes. Id. ¶ 11. Safeco's May 6, 2024, estimate recognized damage to thirty-five cedar shakes, a vent cap, and portions of the copper gutters and coverings. Id. ¶¶ 12-13.

On June 10, 2024, Mr. Sterling asked Safeco to reassess the claim, evaluate the entire roof and its copper valleys, chimney caps, awnings, and flat-roof areas, and consider whether wind or hail had caused additional damage. Id. ¶ 15. Safeco responded that its inspection had revealed "no damage to the valleys" and "no hail damage" to the property. Id. ¶ 16. Safeco declined to conduct the requested reassessment and, instead, directed the Sterlings to retain a contractor and submit any additional information for Safeco's consideration. Id. ¶ 17. Plaintiffs' Complaint alleges that, as of that date, neither an adjuster nor an engineer had climbed onto the roof to inspect it for hail damage. Id. ¶¶ 18-20.

That same month, June 2024, Mr. Sterling contacted Renova Roofing & Construction ("Renova"), a Mississippi roofing contractor that inspects and repairs hail-damaged roofs. Cory Smith ("Smith"), then a Renova employee, and Zach Longgrear, another employee, personally inspected the roof. Smith climbed onto the roof, photographed its condition, assessed the cedar shakes and associated copper fixtures, and prepared Renova's report. Smith later stated that the damage appeared recent and was consistent with the April 9-10, 2024, storm; that the damage was consistent with hail measuring approximately 0.75 to 1.25 inches; and that the extent of the damage required a complete roof replacement. Smith Report [ECF No. 164-2 at 1-2]. By July 11, 2024,

Mr. Sterling had provided Safeco with a roofer's estimate, a damage report, and photographs; he supplied a HailTrace[3] weather report on July 17, 2024. Compl. ¶¶ 21-23 [ECF No. 1].

American Economy then retained EFI Global, a third-party forensic-engineering consulting firm, to investigate the cause and timing of the roof damage. Defs.' Resp. [ECF No. 172 at 5]. EFI assigned engineer Joe Mattson to investigate the reported roof damage and, pursuant to that assignment, Mattson inspected the property on August 12, 2024. Compl. ¶ 26 [ECF No. 1]. On August 20, 2024, EFI submitted Mattison's report to Safeco. EFI Report [ECF No. 119-6 at 1]. The report recognized hail impacts and damage to the roof valleys and stated that the work associated with the valleys could require replacement of the entire roof. Compl. ¶¶ 35-42 [ECF No. 1]. Relying on a CoreLogic[4] weather report, EFI also concluded that no hail had been reported near the property on or around the stated date of loss. Id. ¶¶ 29, 43. The Sterlings allege that Safeco did not provide EFI with their HailTrace report or other information that supported their position. Id. ¶¶ 30-34.

On August 28, 2024, Safeco relied on EFI's report to deny coverage for the hail damage, explaining that "per the engineer's findings, the hail damage to the roof would be excluded from coverage under this claim as the loss did not occur during this date of loss/policy period." Claim Correspondence [ECF No. 119-3 at 45]; see also Compl. ¶ 44 [ECF No. 1].

---

[3] HailTrace is a private weather-data service that generates address-specific reports concerning the date, location, and estimated severity of hail events. On July 17, 2024, Mr. Sterling provided Safeco with a HailTrace report stating that a severe storm producing hail larger than one inch had affected the Sterling property and the surrounding area on April 9, 2024. Compl. ¶ 23 [ECF No. 1].

[4] A CoreLogic Hail Verification Report is an address-specific commercial weather-analysis report used to estimate whether hail affected a particular parcel on a specified date and, if so, the approximate size of the hail. The report analyzes weather data; it does not inspect the property or determine whether particular physical marks were caused by a specific storm

The Sterlings filed this action on February 10, 2025, asserting contractual and extra-contractual claims arising from the investigation and denial of the claim. During the litigation, American Economy paid the cost of replacing the roof based on the possibility that a March 2023 storm had caused the hail damage. Defs.' Resp. [ECF No. 172 at 3]. The parties dispute the legal significance of that payment. This Court's expert-evidence Order *sub judice* does not decide coverage, waiver, breach, bad faith, or punitive damages. The pending dispositive motions present those questions and shall be addressed by this Court in a separate Order.

On October 6, 2025, the Sterlings designated Smith as their sole retained expert. Expert Designation [ECF No. 164-1 at 1-2]. Smith is the president of Revive Claims Consultants and has more than ten years of experience assessing, estimating, investigating, and repairing residential roof damage. The Sterlings retained him at a rate of $150 per hour to offer opinions concerning residential roofing and the adjustment of roof-damage claims. *Id.*; Smith Report [ECF No. 164-2 at 1]. His proposed opinions build upon his June 2024 inspection and the Renova report described above.

Liberty subsequently designated, among others, Robert James ("James") and Kearson Strong ("Strong"). Expert Designation [ECF No. 123]. James is an engineer with a Ph.D. in engineering and experience evaluating hail-related roof damage. He did not personally inspect the Sterling property; he reviewed photographs and other record materials and offered opinions concerning the size, age, cause, and likely timing of the hail impacts. James Report and Curriculum Vitae [ECF No. 124-2]; Defs.' Resp. [ECF No. 172 at 1, 4-5].

Strong is an insurance-claims-handling expert with experience managing and evaluating claims involving alleged hail damage to roofs. She reviewed the claim file, discovery responses, and deposition testimony to assess whether the investigation and handling of the Sterlings' claim

conformed to insurance-industry standards. Strong Report and Curriculum Vitae [ECF No. 124-4]; Defs.' Resp. [ECF No. 172 at 6-7]. Her proposed testimony also addresses American Economy's post-suit payment and the claims-handling significance of the Sterlings' failure to report a loss arising from the possible March 2023 hailstorm. Id.

On December 17, 2025, the Sterlings moved to exclude James's testimony and to limit Strong's testimony. [ECF Nos. 161, 162]. The Sterlings contend that James supplies post-denial reasoning that was not available to the insurer when it denied the claim. They also seek to prevent Strong from offering technical hail-causation opinions, relying on undisclosed post-litigation information, or asserting late notice as a basis for denying coverage when the insurer did not identify late notice in its denial correspondence. Pls.' Mem. [ECF No. 162 at 1-3].

Two days later, Liberty moved to exclude Smith's testimony in its entirety, arguing that his report states conclusions without identifying a sufficiently reliable methodology. [ECF Nos. 164, 165]. Liberty later requested leave to file a limited sur-reply addressing Plaintiffs' credibility regarding misstatements in defense briefs; purported justification of Defendants' attached arguments; and assertions concerning the identity and conduct of the insurer. [ECF No. 175].

## II. GOVERNING STANDARD

Federal Rule of Evidence 702[5] governs the admission of expert testimony. Under Rule 702, this District Court serves as a "gatekeeper" and must determine whether the proposed testimony

[5] Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

is both relevant and reliable before admitting it. *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589, 592-93 (1993). That responsibility applies to scientific testimony and to testimony based on technical or other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137526 U.S. 137, 147-49 (1999).

The proponent bears the burden of demonstrating, by a preponderance of the evidence, that the proposed testimony satisfies Rule 702's admissibility requirements. *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).; see also *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). A witness's qualifications alone do not establish admissibility; rather, the proposed opinion must remain within the reasonable confines of the witness's expertise and must address matters that require specialized knowledge. See *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

The reliability inquiry remains flexible and depends on the nature of the proposed testimony; as such, *Daubert* identified several considerations that may assist the district courts: whether the proposed theory or technique can be tested; whether it has been subjected to peer review; its known or potential error rate; the existence of standards controlling its operation, and its general acceptance within the relevant field. 509 U.S. at 593-94. Those considerations neither constitute a comprehensive checklist, nor apply with equal force in every case. *Kumho Tire*, 526 U.S. at 150. When an expert witness relies principally on experience, the witness must explain how that experience supports the opinion, why it supplies a sufficient basis, and how the witness reliably applied it to the facts. See *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 246-48 (5th Cir. 2002). Unsupported speculation or subjective belief does not satisfy Rule 702. *Puga v. RCX Solutions, Inc*., 922 F.3d 285, 293 (5th Cir. 2019).

This Court, thus, must examine the expert's reasoning and methodology, not simply the expert's ultimate conclusion. *Daubert*, 509 U.S. at 595. The Court may exclude an opinion when the expert offers only his own assurance that the conclusion follows, or when too great an analytical gap separates the underlying information from the opinion. See e.g. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). Once the proponent establishes a reliable foundation, disputes about the bases and sources of an opinion ordinarily affect its weight, not its admissibility. *Puga*, 922 F.3d at 294. Cross-examination, contrary evidence, and instructions advising the jury how to evaluate and weigh expert testimony remain the traditional means of testing admissible expert testimony. *Daubert*, 509 U.S. at 596.

Federal Rule of Evidence 403[6] supplies additional safeguards. This Court may limit cumulative testimony and exclude opinions that merely state legal conclusions, or speculate about a party's subjective intent. See *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997). An expert may explain specialized practices and applicable industry standards. The expert may not instruct the jury on the governing law or decide the ultimate legal questions reserved for this Court.

## III. DISCUSSION

### A. Defendants' Motion for Leave to File a Limited Sur-Reply [ECF No. 175]

The United States Court of Appeals for the Fifth Circuit disfavors sur-replies. *Warrior Energy Services Corp. v. ATP Titan M/V*, 551 F. App’x 749, 751 n.2 (5th Cir. 2014). The ordinary sequence of motion practice allows the nonmovant to respond and the movant to reply, thereby

---

[6] Federal Rule of Evidence 403 provides: “The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.”

giving the movant the final word on its motion. *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001). A sur-reply may be appropriate when the movant presents a new argument or new evidence for the first time in its reply. *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024). In that circumstance, the Court must either allow the nonmovant an opportunity to respond or decline to rely upon the new material. *Id.* When the reply presents no new argument or evidence, the Court acts within its discretion by denying leave to file a sur-reply. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).

Defendants identify no new evidence, newly decided authority, or new substantive argument in Plaintiffs' reply that requires additional briefing. Their proposed sur-reply instead addresses Plaintiffs' counsel's characterizations of Defendants' earlier representations and seeks to clarify matters Defendants could have addressed in their response. This Court independently examines the pleadings and the record and can determine for itself whether counsel's competing characterizations have merit. To the extent Plaintiffs' reply contains any new characterization or argument, the Court does not rely upon it in deciding the underlying motion. See *Georgia Firefighters'*, 99 F.4th at 774.

This Court has reviewed the proposed sur-reply solely to determine whether further briefing is warranted; it has not considered that filing in deciding Plaintiffs' underlying motion. Finding no basis to depart from the ordinary briefing sequence, this Court denies Defendants' Motion for Leave to File a Limited Sur-Reply [ECF No. 175]. Plaintiffs, as the movants, are entitled to the final word on their motion. *Lacher,* 147 F. Supp. 2d at 539 ("Thus, the movant is entitled to file the last pleading.").

### B. Plaintiffs' Motion to Strike or Exclude Defendants' Experts [ECF No. 161]

#### 1. Robert James

Plaintiffs advance two principal objections to James. First, they argue that the insurer did not possess James's report when it denied the claim and, therefore, may not use James to support the denial. Secondly, they contend that James's alleged findings duplicate Mattson, the engineer whose EFI report preceded the denial.

Plaintiffs' first objection identifies a legitimate limitation on the purpose for which Defendants may use James's testimony, but it does not justify excluding that testimony altogether. Mississippi law distinguishes between contractual coverage and an insurer's arguable basis for denying a claim. When the dispute concerns contractual coverage, an insurer may invoke a policy exclusion even if it did not identify that exclusion in its denial letter. *Sobley v. Southern Natural Gas Co.*, 210 F.3d 561, 564 (5th Cir. 2000). When coverage exists and the dispute concerns whether the insurer acted in bad faith, however, the Court considers only the reasons the insurer communicated to the insured and the facts available to the insurer when it denied the claim—not reasons or evidence developed after litigation began. *Id.*; *State Farm Mutual Automobile Insurance Co. v. Grimes*, 722 So. 2d 637, 641 (Miss. 1998) (affirming that the Court considers only the reasons the insurer communicated to the insured and the facts available to the insurer when it denied the claim, not reasons or evidence developed after litigation began).; *Bankers Life & Casualty Co. v. Crenshaw*, 483 So. 2d 254, 273 (Miss. 1985) (holding that the determination of whether an insurer had an arguable or legitimate basis for denying a claim is evaluated based strictly on the reasons communicated to the insured and the facts available to the insurer at the time of denial, not on evidence or defenses developed after litigation began).

*In Penthouse Owners Association, Inc. v. Certain Underwriters at Lloyd's, London*, the district court limited the insurer, on the arguable-basis issue, to evidence in its possession when it denied the claim. No. 1:07-CV-568-HSO-RHW, 2011 WL 96514, at *5 (S.D. Miss. Jan. 11, 2011). The court, however, also stated that the insurer would not face that restriction on every other issue. *Id*. The distinction prevents an insurer from manufacturing a new good-faith explanation after denial without disabling it from defending contractual coverage or rebutting an opposing expert.

James did not participate in the adjustment and cannot testify that the insurer actually relied upon his later report. Defendants also may not use his post-denial work to insert a new reason for denial or new historical information that the insurer lacked when it acted on the denial. Those restrictions do not make all of his engineering testimony irrelevant. The timing and cause of the hail damage remain relevant to contractual coverage. His testimony also may rebut Smith's causation opinions. To the extent James evaluates photographs, weather information, and other materials already contained in the claim record, he may explain their technical significance. Federal Rule of Evidence 703[7] does not impose the categorical timing bar that Plaintiffs propose.

This Court therefore will permit James to offer otherwise admissible engineering opinions concerning the age, size, timing, and cause of the hail damage, including opinions responsive to Smith. Defendants may not present James's post-denial conclusions as information the insurer possessed or relied upon when it denied the claim. If Defendants offer his testimony on the extra-

[7] Federal Rule of Evidence 703 provides in pertinent part: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."

contractual claims, they must tie it to the stated denial reason and the contemporaneous facts; James may not create an after-the-fact reason for denial.

The cumulative-evidence objection does not justify wholesale exclusion before trial. The Fifth Circuit in *Leefe v. Air Logistics, Inc*. recognizes the trial court's discretion to exclude a second expert when the proposed testimony merely duplicates testimony already received. 876 F.2d 409, 411 (5th Cir. 1989). It does not, however, establish a one-expert-per-subject rule. James and Mattson share an engineering subject area, but the present submissions do not show that every James opinion will repeat Mattson's testimony. James's testimony also serves the distinct purpose of rebutting Smith's causation analysis. This Court will not permit needlessly repetitive testimony. Accordingly, Sterlings may renew a focused Rule 403 objection if Defendants elicit substantially duplicative opinions at trial.

**2. Kearson Strong**

Strong is a claims-handling expert. Plaintiffs do not seek her complete exclusion. They challenge her opinions concerning hail damage, the insurer's post-suit payment, and a possible late-notice issue associated with a March 2023 storm.

Strong may explain customary property-claim practices, the significance of prompt reporting and inspection, and the manner in which a claims professional ordinarily evaluates roof-loss information. She also may evaluate identified claims-handling steps against articulated industry standards, provided that she uses record materials disclosed to the Sterlings. Her testimony must identify the practice or standard, the disclosed facts she considered, and the reasoning that connects the two. See *Moore v. International Paint*, *LLC*, 547 F. App'x 513, 516 (5th Cir. 2013) (affirming exclusion of a speculative expert theory unsupported by the record).

Several boundaries apply here. Strong may not tell the jury that the policy legally provided no coverage, that Defendants owed the Sterlings nothing, that the later payment waived or preserved a policy defense, or that any party acted in bad faith. Those are legal conclusions or matters reserved for the Court and jury. See *Askanase*, 130 F.3d at 672-73. She also may not testify that Defendants made the post-suit payment as a favor, intended to benefit the Sterlings, intentionally overpaid the claim, or possessed some other subjective motive. *Marlin* rejects expert testimony that undertakes to determine a party's intent or state of mind. 248 F. App'x at 541. Accordingly, Strong may describe documented conduct and apply industry standards to it; she may not convert inferences about motive into expert facts.

Strong also may discuss observable roof conditions and how a claims handler would use those observations. She may not offer an independent engineering or meteorological causation opinion about the precise date, age, or size of the hail unless Defendants first establish that her qualifications and disclosed methodology satisfy Rule 702 for that distinct subject. Her claims-handling experience does not automatically qualify her to duplicate the engineers' technical causation opinions.

Strong's opinions about the post-suit payment must rest solely on nonprivileged information disclosed to the Sterlings. The Mississippi Supreme Court in *Travelers Property Casualty Co. of America v. 100 Renaissance, LLC* explained that a litigant may not defend the reasonableness of its conduct by placing what it learned at issue while using privilege to prevent the opposing party from discovering that information. 308 So. 3d 847, 856 (Miss. 2020). The same fairness concern applies when a party selectively discloses favorable conclusions, but withholds the information needed to test them. See *Doe 1 v. Baylor University*, 320 F.R.D. 430, 440 (W.D. Tex. 2017).

This evidentiary motion before this Court does not require the Court to decide the ultimate scope of any privilege or waiver. It does require a testable foundation for Strong's opinions. If Strong relied only on the supplemental discovery response and other produced materials, she may discuss what those materials show, subject to the restrictions above. Defendants may not use her as a conduit for undisclosed communications or reveal selected conclusions from withheld material, while preventing meaningful examination of their basis. Strong may not fill gaps in the disclosed record with speculation.

Finally, Strong may explain why prompt notice matters to an insurer's ability to investigate a claimed March 2023 loss if that issue remains relevant after the Court decides the dispositive motions. She may not represent late notice as the reason Defendants denied the reported April 2024 claim, and Defendants may not use her testimony to rewrite the denial letter. The Court reserves any narrower relevance objection until the merits rulings establish which coverage theories and defenses remain for trial.

Plaintiffs' motion is therefore GRANTED in PART and DENIED in PART as to Strong. This Court permits claims-handling testimony within the aforementioned limits, but excludes the legal conclusions, state-of-mind testimony, undisclosed-basis testimony, and unsupported technical causation testimony described above.

### C. Defendants' Motion to Exclude Cory Smith [ECF No. 164]

Defendants do not materially challenge Smith's qualifications. Smith has more than ten (10) years of experience assessing, estimating, investigating, and repairing residential roof damage, including hail damage. He is a licensed independent adjuster and appraiser and a Haag-

certified[8] residential roof inspector. He also personally inspected the Sterlings' roof before its replacement. Defendants instead argue that his short report states conclusions without explaining a reliable method. *See* ECF No. 164-2 at 1-2; ECF No. 169.

As a retained expert, Smith had to provide a report satisfying Federal Rule of Civil Procedure 26(a)(2)(B)[9]. The report identifies six opinions and supplies their principal bases. Smith described his experience, personal knowledge of the April 2024 storm, use of a HailTrace report, personal roof inspection, photographs, assessment of the cedar shakes and copper fixtures, and preparation of the contemporaneous Renova report. He also listed the additional materials he reviewed. [ECF No. 164-2 at 1-2].

Smith's deposition further elaborated on this disclosed foundation. He testified that he inspected the elevations and roof slopes for several hours, used a shingle gauge as a reference for hail-indentation size, evaluated hail spatter as an indicator of recency, and considered alternative causes such as wear and tear and older weather events. [ECF No. 169-1 at 47-56, 68-69]. That testimony explains the inspection practices underlying the opinions already stated in the report; it does not introduce a different causation theory or an undisclosed ultimate opinion.

Smith's method is experience-based and observational rather than laboratory-based. Daubert's scientific factors do not fit every form of specialized testimony with equal force. *Kumho*

---

[8] *See* Haag Engineering Co., *Certified Inspector Program Overview*, https://haagcertifiedinspector.com (explaining that Haag Certification designates inspectors trained in forensic damage assessment to scientifically differentiate weather-induced damage—such as hail impacts and wind uplift—from manufacturing flaws, mechanical damage, and normal weathering).

[9] Federal Rule of Civil Procedure 26(a)(2)(B) provides in pertinent part that a retained expert's disclosure "must be accompanied by a written report—prepared and signed by the witness." The report must contain "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them."

*Tire*, 526 U.S. at 150. The Fifth Circuit has recognized that personal observations, training, and professional experience may support a reliable expert opinion when the witness connects that experience to the conclusion. *Pipitone*, 288 F.3d at 246-48. Smith has made that connection here: he inspected the roof soon after the reported storm, identified physical indicators he associates with hail impact and recency, compared those indicators with weather information, considered wear, tear, and earlier storms, and used his roofing experience to assess repair feasibility.

The decisions Defendants cite show what Rule 702 forbids, but they do not require exclusion on this record. *Hathaway* rejected an expert's unsupported assertion that his credentials made his conclusion so. 507 F.3d at 318. *Brown v. Illinois Central Railroad Co*. affirmed exclusion when the expert relied on education and experience without articulating a credible method connecting the evidence to the opinion. 705 F.3d 531, 536-37 (5th Cir. 2013). *Moore v. Ashland Chemical Inc*. involved a toxic-exposure opinion lacking reliable exposure data and objective validation. 151 F.3d 269, 276-79 (5th Cir. 1998) (en banc). Smith does not rely on credentials alone. He identifies an inspection protocol, physical observations, measurement tools, weather information, and indicators he used to distinguish recent hail impact from older conditions.

Defendants may challenge whether hail spatter reliably dates the damage, whether Smith adequately distinguished the April 2024 event from earlier storms, whether HailTrace data deserves weight, and whether his conclusion is stated with sufficient certainty. Those questions provide substantial ground for cross-examination. They do not establish that Smith merely guessed. The competing experts' disagreement over the same roof evidence reinforces that the jury must evaluate credibility and weight after the Court admits sufficiently reliable testimony from both sides.

*Baugh v. Voyager Indemnity Insurance Co*. does not alter the result. The expert there failed to provide the bases and reasons for his opinions, did not clearly state that the claimed storm caused the roof damage, did not identify the principles or methods used to attribute damage to that storm, did not identify photographs showing fresh rather than old damage, and did not consider obvious alternative causes. No. 19-14275, 2020 WL 8257753, at *2, *5-10 (E.D. La. Nov. 30, 2020). The court confronted little more than the expert's assurance that he could tell when the damage occurred. *Id*. at *7-8.

Smith's disclosure and testimony supply the links missing in *Baugh*. His report states that the hail damage appeared recent and was consistent with the April 9-10, 2024 storm. It identifies his personal inspection, the Renova photographs and report, the HailTrace information, and his observations of the roof and copper fixtures. His deposition then explains the disclosed inspection process: he inspected every elevation and slope, used a shingle gauge, treated hail spatter as evidence of recency, and considered alternative causes. Defendants may dispute the scientific strength of those indicators, but this record contains an articulated chain of reasoning rather than an unsupported assurance.

Rule 26 requires the report itself to disclose the expert's opinions and their bases; a deposition cannot become a vehicle for adding an undisclosed opinion or replacing the report with a materially different methodology. Smith's deposition did neither. The report identified the recent hail opinion, the April 2024 storm, the inspection, the physical conditions, the photographs, and the weather information. The deposition supplied detail about how he performed that disclosed inspection and interpreted those disclosed conditions. On this record, the report gave Defendants notice of the opinions, principal reasons, and supporting information, and Defendants examined Smith at length about them. The Court will not permit Smith to offer a new ultimate opinion or

materially different methodology beyond his report and reasonable elaboration of it, but Rule 26 does not require his exclusion.

Defendants' Rule 403 argument is derivative of their reliability challenge. Smith's testimony concerns central factual issues and carries substantial probative value. Careful examination, contrary experts, and appropriate instructions can address the asserted weaknesses without excluding the Sterlings' only retained expert. The Court therefore denies Defendants' Motion to Exclude Cory Smith [ECF No. 164].

## IV. CONCLUSION

For the above-articulated reasons, this Court ORDERS as follows:

1. Defendants' Motion for Leave to File a Limited Sur-Reply **[ECF No. 175]** is **DENIED**. The granting of such motions is discretionary and this Court chooses not to encourage another round of pleadings when this Court may study the pleadings and determine credibility for itself.

2. Plaintiffs' Motion to Strike or Exclude Defendants' Experts and/or Expert Reports and Opinions **[ECF No. 161]** is **GRANTED IN PART** and **DENIED IN PART**. Robert James and Kearson Strong may only testify within the limits stated in this Opinion and Order.

3. Defendants' Motion to Exclude Expert Testimony **[ECF No. 164**] is **DENIED**. Cory Smith may testify within the scope of his report and reasonable elaboration of its disclosed opinions and methodology, as provided in his expert testimony.

4. This Court's ruling does not decide coverage, waiver, breach, bad faith, punitive damages, or the admissibility of particular trial exhibits. The parties at trial may raise focused trial objections consistent with this Order.

**SO ORDERED this the 31st day of August, 2026.**

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**